142 F.3d 440
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Kevin THOMAS, Plaintiff-Appellant,
v.
Paul O'HAVER, et al., Defendants-Appellees.
 No. 97-1877.
 United States Court of Appeals,
Seventh Circuit.
 .
Submitted Mar. 12, 1998*.
Decided Apr. 2, 1998.
 
 Appeal from the United States District Court for the Southern District of Indiana, Indianapolis Division. No. IP96-702-C-H/G David F. Hamilton, Judge.
 Before Hon. RICHARD A. POSNER, Hon. WALTER J. CUMMINGS, Hon. KENNETH F. RIPPLE, Circuit Judges.
 
 ORDER
 
 1
 When Kevin Thomas was transferred to Plainfield Correctional Facility ("PCF") from Wabash Valley Correctional Center in May 1995, PCF medical staff confiscated three medicines which Thomas was carrying to control prostate problems. Thomas went without medicine for 18 days until a doctor examined him. Later, in both August and November 1995, Thomas was examined by urologists outside the prison who prescribed Cardura for his prostate, and Yohimbine for erectile dysfunction. Dr. Ivens, a PCF doctor, refused to prescribe the Yohimbine. Thomas sued, claiming that these actions violated his Eighth Amendment rights, and the district court granted summary judgment. We affirm the grant of summary judgment for the defendants.
 
 
 2
 * FACTS
 
 
 3
 In 1994, Thomas was confined at the Wabash Valley Correctional Center. Throughout 1994, Thomas suffered from genital and urinary tract problems. In April 1994, he told medical staff at Wabash Valley that he had not achieved an erection since 1991. In August 1994, he was treated for chlamydia. He also reported painful urination and "nocturnal dribbling." In late August, Wabash Valley medical staff referred him to an outside urologist. Apparently, the outside specialist diagnosed Thomas with an enlarged prostate. Wabash Valley medical records appear to indicate that Thomas was prescribed Yohimbine in January 1995. Yohimbine is a drug that is used to promote erection.
 
 
 4
 On May 19, 1995, Thomas was transferred to PCF. He arrived carrying three medications that he had been prescribed for pain caused by his prostate condition. PCF policy required that the medical staff confiscate any medications carried by a new arrival until a doctor examined him. Pursuant to this policy, Nurse Sherri Reed confiscated Thomas' medicines upon his arrival at PCF. Thomas asked Reed on several occasions over the next few days to return his medicine to him, but she refused and told him that he would have to wait until he saw the prison's doctor. The prison did not send Thomas to a doctor for 18 days.
 
 
 5
 On June 6, Dr. Comeau examined Thomas, and found indications that Thomas had a mass near his prostate. Dr. Comeau prescribed ibuprofen and Colace (for constipation), and scheduled Thomas for a urological examination at Wishard Memorial Hospital. On June 12, Thomas went to Wishard, but abdominal and pelvic scans did not reveal a pelvic mass.
 
 
 6
 Thomas returned to Wishard for a follow-up evaluation on August 22, 1995. Dr. Ludlow diagnosed Thomas with prostatism and erectile dysfunction. Ludlow recommended that Thomas be prescribed two drugs: Cardura, which relaxes the prostate muscles and relieves pressure on the bladder, and Yohimbine. Upon Thomas' return, Dr. Ivens reviewed the material from Wishard, and prescribed the Cardura, but not the Yohimbine. Ivens did not believe that erectile dysfunction was a serious medical need, and Yohimbine was not on PCF's list of approved medicines. Thomas wrote letters to the prison medical staff complaining about the denial of Yohimbine.
 
 
 7
 In November, 1995, Thomas returned to Wishard, where he was diagnosed with bladder outlet obstruction and erectile dysfunction. The urologist at Wishard again recommended Cardura, and Yohimbine, but Dr. Ivens refused to prescribe Yohimbine. Thomas again wrote complaint letters after the second denial of the Yohimbine prescription. PCF never treated Thomas for his erectile dysfunction. On June 10, 1996, Thomas was transferred to the Indiana State Prison.
 
 
 8
 On May 23, 1996, Thomas filed suit, alleging that his Eighth and Fourteenth Amendment rights had been violated by the defendants by the confiscation of his medicine and by Dr. Ivens' refusal to prescribe treatment for his erectile dysfunction. The district court granted summary judgment to the defendants on both claims.
 
 II
 ANALYSIS
 
 9
 This court reviews the grant of summary judgment de novo, viewing the record in the light most favorable to Thomas. See Forbes v. Edgar, 112 F.3d 262, 265 (7th Cir.1997). In order to succeed on an Eighth Amendment claim, Thomas must show that the defendants acted with "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). Deliberate indifference is measured by a criminal recklessness standard. See Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir.1996). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).
 
 A. Confiscation of Medicine Claim
 
 10
 The district court granted summary judgment to the defendants on this claim for two reasons. The court found that Thomas did not "identify any adverse consequences from the confiscation of the medication between the date it was confiscated and the date of his examination by Dr. Comeau." The court alternatively held that the defendants had not violated the Eighth Amendment when Thomas' medicine was confiscated because the defendants confiscated his medicine pursuant to an institutional policy, and so did not act with deliberate indifference. Even though Thomas may be able to show that he had a serious medical need because of the pain that he asserts that he suffered, summary judgment is still appropriate, because Thomas fails to show that any defendant was deliberately indifferent to his condition.
 
 
 11
 Defendants Leo Fang (the prison pharmacist) and Dr. Ivens did not have any involvement in this episode, and thus they are entitled to summary judgment on this claim. Liability under § 1983 must be based on personal involvement in the constitutional violation. See Del Raine v. Williford, 32 F.3d 1024, 1047 (7th Cir.1994). Defendants Neitzke's, O'Haver's, and Winchester's involvement is based on complaints lodged by Thomas after his arrival at PCF. Dean Neitzke, the Supervisor of Heath Care Services for the Indiana Department of Corrections, received a letter from Thomas on May 31, 1995, complaining about the confiscation of his medicine. On the same day, Neitzke forwarded the letter to Paul O'Haver, Superintendent of the Plainfield Correctional Facility, and directed O'Haver to resolve the matter. Because Neitzke acted in response to Thomas' complaint, he did not recklessly disregard Thomas' condition, and summary judgment in his favor was appropriate. Moreover, O'Haver asked his medical staff to follow up on Thomas's complaint, as evidenced by a letter from Nurse Winchester to O'Haver that is in the record. On June 8, Nurse Winchester sent a memo explaining Thomas' medical condition and reporting Dr. Comeau's examination. Thomas does not allege that any of these defendants had any other involvement in his care. While delay may evidence deliberate indifference, see Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir.1996), nothing in the record indicates that either O'Haver or Winchester intentionally delayed treating Thomas. Indeed, Winchester may not even have been aware of Thomas' medical problems until after Dr. Comeau examined Thomas and prescribed new medicine for him. Thomas did not raise a genuine issue of material fact on the deliberate indifference of these defendants.
 
 
 12
 Lastly, Nurse Reed's involvement was the most extensive of all the defendants, because she was the person who took Thomas' medications from him when he arrived at the prison. The key problem with Thomas' claim against Nurse Reed is that nothing in the record suggests that Nurse Reed knew of the allegedly serious nature of Thomas' problem prior to when he saw Dr. Comeau. The record contains Thomas' Wabash Valley discharge summary. The summary indicates that Thomas left Wabash Valley with three drugs for "back pain." Thomas has not presented evidence to show that Nurse Reed knew any more about Thomas' condition than what was on the summary when she confiscated his medicines. "Back pain" is not a condition that is necessarily serious, so Nurse Reed may not have drawn the inference that Thomas was suffering from a serious medical problem. While Thomas complained to Nurse Reed afterwards, Thomas did not relate the specifics of his complaints, so we cannot say that Nurse Reed actually knew of the depth of his problems. Therefore, Thomas failed to show that Nurse Reed was deliberately indifferent to his plight, and summary judgment in favor of Nurse Reed was appropriate.
 
 B. Erectile Dysfunction Claim
 
 13
 Thomas complains that Dr. Ivens improperly withheld prescriptions for Yohimbine recommended by outside doctors in August and November 1995. The district court determined that erectile dysfunction was not a serious medical need, and granted summary judgment on this point. We affirm, because even though we believe Thomas might be able to survive summary judgment on the element of serious medical need, Thomas cannot survive summary judgment on the element of deliberate indifference.
 
 1. Serious Medical Need
 
 14
 In Gutierrez v. Peters, 111 F.3d 1364, 1372-73 (7th Cir.1997), we identified a number of approaches to defining what medical needs are "serious" for Eighth Amendment purposes used by other circuits that were "sensible and workable." After Gutierrez, a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention ." Id. at 1373 (quoting Laaman v. Helgemoe, 437 F.Supp. 269, 311 (D.N.H.1977). The district court decision, issued prior to Gutierrez, defined a serious medical need as one that is "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." Slip op at 8 (citing Davis v. Jones, 936 F.2d 971, 972 (7th Cir.), reh. denied, 946 F.2d 538 (7th Cir.1991). In light of the broader definition applied in Gutierrez, this definition may be underinclusive.
 
 
 15
 The evidence available to the district court at summary judgment illustrates the closeness of this question. This is not a situation in which Thomas believes that treatment is necessary but no medical personnel agree. The state admitted in its summary judgment motion that two doctors to whom the prison had referred Thomas recommended treatment for Thomas' erectile dysfunction. In light of Gutierrez, the fact that two doctors had recommended treatment for Thomas suggests that Thomas' condition may be a serious medical need. While Dr. Ivens presented his affidavit, which stated that in his opinion, impotence was not a serious medical need, in the presence of the admission by the state, this means that there is a dispute over the material question whether Thomas' condition was a serious medical need. As this issue is a question of fact, see Cooper v. Casey, 97 F.3d 914, 917 (7th Cir.1996), the district court should not have decided this issue on summary judgment. However, even though summary judgment may not be appropriate on this element, Thomas cannot raise a genuine issue of material fact about whether Dr. Ivens was deliberately indifferent to him. Thus, we will still affirm the district court's judgment.
 
 2. Deliberate Indifference
 
 16
 The district court indicated that Dr. Ivens' decision was an "exercise of medical judgment." This is sufficient to show that Dr. Ivens is entitled to summary judgment on the issue of deliberate indifference. This court has stated that medical treatment decisions made by medical professionals are presumptively valid. See Estate of Cole v. Fromm, 94 F.3d 254, 262 (7th Cir.1996), cert. denied sub nom. Estate of Cole v. Butler, 519 U.S. 1109, 117 S.Ct. 945, 136 L.Ed.2d 834 (1997). "[L]iability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." Id. (quoting Youngberg v. Romeo, 457 U.S. 307, 323, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982) (footnotes omitted)). When a medical professional incorrectly exercises professional judgment, he may be liable for malpractice, but not for a constitutional violation. The Eighth Amendment is not a medical malpractice statute, and the deliberate indifference standard is much stricter than a negligence standard. See Snipes v. DeTella, 95 F.3d at 586, 590 (7th Cir.1996), cert. denied, 519 U.S. 1126, 117 S.Ct. 980, 136 L.Ed.2d 863 (1997).
 
 
 17
 Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment is appropriate at all, but a disagreement in treatment alone will not support a constitutional violation. Id. Dr. Ivens may or may not be correct about the seriousness of Thomas' medical need, but if Dr. Ivens is wrong, that does not make him deliberately indifferent to Thomas' plight. Therefore, we AFFIRM the district court's grant of summary judgment.
 
 AFFIRMED
 
 
 *
 After an examination of the briefs and the record, we have concluded that oral argument is unnecessary, and the appeal is submitted on the briefs and record. See Fed. R.App. P. 34(a); Cir. R. 34(f)