**Jerome DOUGLAS, Jr., Plaintiff,**

v.

**Marilyn STANWICK, Head Nurse at Monroe County Jail, et al., Defendants.**

No. 98–CV–6249L.

United States District Court, W.D. New York.

April 17, 2000.

Phillip R. Hurwitz, Rochester, NY, for plaintiff.

Stephen Mahoney, Deputy County Attorney, Howard A. Stark, Dep. County Attorney, Monroe County Attorney, Michael E. Davis, Department of Law, Charles S. Turner, County Attorney, Jeffrey M. Wilkens, Osborn, Reed & Burke, L.L.P., Rochester, NY, for defendants.

## DECISION AND ORDER

LARIMER, Chief Judge.

Plaintiff, Jerome Douglas, Jr., commenced this action *pro se* on June 10, 1998, asserting claims pursuant to 42 U.S.C. § 1983. The court appointed counsel to represent plaintiff on September 15, 1998. Plaintiff, who is currently an inmate in the custody of the New York State Department of Correctional Services, alleges that on February 14, 1998, while he was a pretrial detainee at the Monroe County Jail ("the Jail") in Rochester, New York, he broke a bone in his left hand in an altercation with another inmate. He was later taken to a hospital, where he was treated by an orthopedic surgeon, who prescribed Darvocet for pain. Plaintiff alleges that defendants Marilyn Stanwick and Linda Clark, M.D., who at all relevant times were respectively employed as the supervising nurse and a physician at the Jail, withheld his medication on several occasions, causing him to suffer pain. Plaintiff alleges that defendants thereby were deliberately indifferent to his serious medical needs, in violation of his rights under the United States Constitution. Plaintiff seeks an award of compensatory and punitive damages, plus costs and at-torney's fees. Defendants have moved for summary judgment.

## FACTUAL BACKGROUND

When plaintiff told staff members at the Jail about his injury on February 14, x-rays were taken of his hand, revealing a fracture. Plaintiff was given Tylenol for pain, and several hours later he was taken to St. Mary's Hospital in Rochester. Medical personnel at St. Mary's placed his hand in a splint, and gave plaintiff a prescription for a three-day supply of pain medication. The prescription was forwarded to the Jail, and this initial prescription was filled and administered to plaintiff.

Plaintiff returned to St. Mary's on February 20, 1998, and a cast was put on his hand. It does not appear that any additional medication was prescribed during that visit.

The complaint alleges that over the course of the next several days, plaintiff complained of pain in his hand, and was again given Tylenol. Plaintiff alleges that Stanwick or another nurse under her supervision twice told him that he would be taken to see the Jail physician, but he was not.

Plaintiff was again taken to St. Mary's on March 6, 1998 and was seen by Stephanie E. Siegrist, M.D. Plaintiff's cast was removed, and Dr. Siegrist prescribed Darvocet, a narcotic, for pain. When plaintiff returned to the Jail, however, Dr. Clark directed the staff to withhold this medication. It appears that she gave an oral instruction to that effect to Stanwick, who memorialized it in writing. *See* Complaint Ex. A. Dr. Clark states that she wanted the Jail nurses to see if over-the-counter pain medicines would suffice to control plaintiff's pain, since many Jail inmates have a history of substance abuse problems. Plaintiff himself has a history of marijuana and cocaine use, although Dr. Clark states that she does not remember if she was aware of that at the time that she

issued her hold order. Based on Dr. Clark's order, the nurses at the Jail refused to give plaintiff Darvocet when he complained of pain, instead giving him Tylenol.

On April 9, 1998, plaintiff again was taken to St. Mary's Hospital for follow-up treatment. He allegedly told Dr. Siegrist that he was not being given his prescribed medicine. She again directed that he be given Darvocet for pain. *See* Plaintiff's Attorney's Declaration (Docket Item 44) Ex. 14. Plaintiff was never given Darvocet at the Jail, however. Stanwick states in her affidavit that plaintiff's medical records at the Jail do not indicate that he complained of hand pain at any time after April 9, though, and Dr. Clark states that this new directive from Dr. Siegrist was never forwarded to her. Stanwick Aff. (Docket Item 42) ¶¶ 30, 32; Clark Aff. (Attachment to Docket Item 34) ¶ 20.

Plaintiff alleges that he filed a grievance with Jail officials, but never got a response. Defendants, however, do not indicate any awareness of the alleged grievance, and plaintiff has not submitted a copy of it.

As stated, plaintiff filed the complaint in this action in June 1998, at which time he was still at the Jail. Plaintiff left the Jail the following month.

## DISCUSSION

### I. General Standards

■■■ State officials' deliberate indifference to the medical needs of persons in custody can, depending on the circumstances, give rise to a constitutional violation. Whereas convicted prisoners' right to medical care stems from the Eighth Amendment's ban on cruel and unusual punishments, however, *see Farmer v. Brennan,* 511 U.S. 825, 827, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), the analogous right of pretrial detainees arises under the Due Process Clause of the Fourteenth Amendment. *Henderson v. Sheahan,* 196 F.3d 839, 845 n. 2 (7th Cir.

1999); *Lopez v. LeMaster,* 172 F.3d 756, 764 (10th Cir.1999); *Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir.1996); *Ali v. Szabo,* 81 F.Supp.2d 447, 463 (S.D.N.Y.2000). Although the Supreme Court has not stated whether this due process right is identical to, or exactly coextensive with, inmates' Eighth Amendment rights in this regard, "it is plain that an unconvicted detainee's rights are at least as great as those of a convicted prisoner." *Lopez,* 172 F.3d at 764 (citing *City of Revere v. Massachusetts Gen'l Hosp.,* 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983)).

In order to establish a § 1983 claim based on inadequate medical care, a plaintiff must prove "deliberate indifference to [his] serious medical needs." *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The standard of deliberate indifference includes both subjective and objective components. "First, the alleged deprivation must be, in objective terms, 'sufficiently serious.'" *Hathaway v. Coughlin,* 37 F.3d 63, 66 (2d Cir.1994) (citations omitted), *cert. denied,* 513 U.S. 1154, 115 S.Ct. 1108, 130 L.Ed.2d 1074 (1995); *Ramos v. O'Connell,* 28 F.Supp.2d 796, 802 (W.D.N.Y.1998). Second, the defendant "must act with a sufficiently culpable state of mind." *Hathaway,* 37 F.3d at 66. An official acts with the requisite deliberate indifference when that official "knows of and disregards an excessive risk to [a detainee's] health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970.

The Second Circuit has stated that a medical need is "serious" for constitutional purposes if it presents "'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway,* 37 F.3d at 66). Among the relevant factors are "[t]he existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (quoting *McGuckin v. Smith,* 974 F.2d 1050, 1059–60 (9th Cir.1992)).

■ With respect to the second prong of this claim, *i.e.,* the culpability of the defendants' conduct, courts give prison officials broad discretion in determining the type and extent of medical treatment given to inmates. *Thomas v. Pate,* 493 F.2d 151, 157 (7th Cir.1974), *cert. denied,* 423 U.S. 877, 96 S.Ct. 149, 46 L.Ed.2d 110 (1975). Therefore, "[i]t is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation. Moreover, negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Id.* (citation omitted); *accord Rosales v. Coughlin,* 10 F.Supp.2d 261, 264 (W.D.N.Y.1998). Only if the malpractice rises to the level of "criminal recklessness" will the defendant be found liable. *Hemmings v. Gorczyk,* 134 F.3d 104, 108 (2d Cir.1998). This state of mind exists when the official " 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.' " *Hathaway,* 99 F.3d at 553 (quoting *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)).

## II. Serious Medical Need

■ In the case at bar, defendants contend that plaintiff's desire for Darvocet instead of Tylenol did not constitute a serious medical need. They argue that there is no evidence that plaintiff's pain was so severe, or the Tylenol so inadequate to control it, as to give rise to a constitutional violation.

Although I am not convinced that plaintiff has demonstrated any issues of fact with respect to this issue, I decline to grant summary judgment on this ground. There is authority, albeit not from the Second Circuit, that a serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gutierrez v. Peters,* 111 F.3d 1364, 1373 (7th Cir.1997). Here, Dr. Siegrist's prescribing of Darvocet could arguably be viewed as indicating her belief that this was necessary treatment for plaintiff's pain. Moreover, it does appear that plaintiff complained to members of the nursing staff of pain in his hand at times, *see* Plaintiff's Attorney's Declaration Ex. 7–9, and whether defendants were made aware of these complaints, or whether plaintiff's pain would have been obvious to an observer, might present factual issues that would make summary judgment inappropriate.

I find it unnecessary to determine whether those matters do present issues of fact, though, because it is clear that defendants are entitled to summary judgment due to the lack of evidence to support the second element of plaintiff's claim, *i.e.,* that defendants' actions were sufficiently culpable.

## III. Claim Against Dr. Clark

■ With respect to Dr. Clark, the record reflects that she was told by someone from the Jail nursing staff about plaintiff's injury and Dr. Siegrist's prescription for Darvocet. She instructed the nursing staff to place a hold on the prescription so that the nurses could determine if plaintiff was in pain and, if so, whether over-the-counter, non-narcotic pain relievers could suffice to control his pain.

Dr. Clark did see plaintiff at several sick calls after he injured his hand, but these were all for other problems, such as eye

problems and headaches. Defendant Clark's Motion for Summary Judgment Ex. F. By plaintiff's own admission, he never told Dr. Clark that he had pain in his hand, or asked her if he could receive Darvocet. *See* Plaintiff's Aff. ¶ 17.

Based on this evidence, I find that plaintiff's claim against Dr. Clark cannot stand. Her decision to countermand Dr. Siegrist's Darvocet prescription was based on her medical judgment, and her reasonable concern about providing narcotics to jail inmates. *See Holleman v. Duckworth,* 202 F.3d 273 (table) 1999 WL 1082511 *1 (7th Cir.1999) ("A prison has a legitimate interest in limiting the use of narcotics by prisoners").[1] While I realize that the reasons for her actions come from her own affidavit, I do not believe that this requires me to make determinations of credibility that are impermissible on a motion for summary judgment. The record simply contains no evidence to suggest that Dr. Clark's actions were based on anything other than her medical judgment. Certainly there is no indication that she acted with "criminal recklessness." *Hemmings,* 134 F.3d at 108.

In addition, the fact that her directive may have been contrary to Dr. Siegrist's prescription does not indicate that Dr. Clark acted for culpable reasons. Not every physician will treat every ailment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs. That is particularly true when one of the physicians is more familiar with the jail or prison environment, and therefore more sensitive to the need to restrict narcotics use. *See Thomas v. O'Haver,* 142 F.3d 440 (table), 1998 WL 171270 * 4 (7th Cir.1998) ("Physicians will disagree about whether a particular course of treatment is appropriate, or even if treatment is appropriate at all, but a dis-

agreement in treatment alone will not support a constitutional violation") (citing *Snipes v. DeTella,* 95 F.3d at 586, 590 (7th Cir.1996), *cert. denied,* 519 U.S. 1126, 117 S.Ct. 980, 136 L.Ed.2d 863 (1997)); *Foote v. Nevada Dept. of Prisons,* 139 F.3d 904 (table), 1998 WL 74993 *1 (9th Cir.1998) ("A difference of opinion, whether between an inmate and physician or between physicians, does not give rise to an Eighth Amendment violation") (citing *Sanchez v. Vild,* 891 F.2d 240, 242 (9th Cir.1989)); *Taylor v. Dutton,* 85 F.3d 632 (table), 1996 WL 253856 *2 (7th Cir.1996) ("Mere differences of opinion among medical personnel over questions of treatment do not give rise to an Eighth Amendment claim") (citing *Estelle,* 429 U.S. at 107, 97 S.Ct. 285); *Hanson v. Smith,* 9 F.3d 1557 (table), 1993 WL 499831 *2 (10th Cir.1993) ("Even should medical opinions differ among prison doctors, such a difference of opinion does not support a claim of cruel and unusual punishment") (citing *Ramos v. Lamm,* 639 F.2d 559, 575 (10th Cir. 1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981)); *Sanders v. Vigil,* 917 F.2d 28 (table), 1990 WL 160964 *2 (9th Cir.1990) (evidence of disagreements between outside doctors and prison doctors might be sufficient to overcome summary judgment motion in simple malpractice action, but even if proven, such evidence would not demonstrate deliberate indifference); *Cruz v. Ward,* 558 F.2d 658, 662 (2d Cir.1977) ("it is to be expected that prison physicians should sometimes disagree with the opinions of the hospital staff"), *cert. denied,* 434 U.S. 1018, 98 S.Ct. 740, 54 L.Ed.2d 765 (1978); *Gardner v. Zaunbrecher,* No. 95–CV–1543, 1996 WL 507072 *2 (N.D.N.Y. Sept. 4, 1996) (disagreement among plaintiff's physicians over proper course of treatment did not show conscious or callous indifference to serious medical need); *Webb v. Jackson,* No. 92 Civ. 2149, 1994 WL 86390

---

1. *Holleman* and several of the other cases cited in this Decision and Order are unreported cases, and as such are not to be cited as precedential authority pursuant to the rules of their respective circuits. They are cited herein not as binding precedent, however, but for the logic and persuasiveness of their reasoning.

*3 (S.D.N.Y. Mar. 16, 1994) ("It is well established that a mere differences [sic] in opinion, whether between doctors or laymen, based on medical care does not give rise to an Eighth Amendment violation of inadequate medical treatment pursuant to section 1983"), *aff'd*, 47 F.3d 1158 (2d Cir. 1995).

Moreover, Dr. Clark did not direct the nursing staff to withhold *all* pain medication from plaintiff, but just one particular, narcotic medication. That does not show sufficient disregard to plaintiff's medical needs to give rise to a constitutional claim. *See Reeves v. Caldwell*, No. Civ. 98–363–ST, 1999 WL 375580 *5 (D.Or. Mar. 3, 1999) (plaintiff's allegations that Tylenol did not sufficiently alleviate his pain, and that defendant should have increased pain medication sooner, did not rise to level of deliberate indifference sufficient to amount to constitutional violation); *Sanocki v. Reno*, No. Civ. A. 96–3603, 1998 WL 184460 *5 (D.Kan. Mar.16, 1998) (medical decision to provide different pain relief medication than that recommended by consulting surgeon did not represent cruel and unusual punishment); *Hendrickson v. Emergency Med. Servs.*, No. Civ.A. 95–4392, 1996 WL 472418 *2 (E.D.Pa. Aug.20, 1996) (although plaintiff argued that he should have been given something stronger than Advil or Tylenol for pain, "mere disagreements over medical judgment do not state Eighth Amendment claims") (quoting *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir.1990)); *Jones–Bey v. Wright*, No. 3:93cv0440, 1996 WL 277961 *6 (N.D.Ind. May 14, 1996) (defendant physician's decision to discontinue pain medication that plaintiff had been taking at county jail was decision regarding appropriate medical treatment, and plaintiff's disagreement with that decision did not establish deliberate indifference); *Floyd v. Owens*, No. 86–7176, 1987 WL 11906 *1 (E.D.Pa. June 2, 1987) (plaintiff's allegation that "medical staff" should have prescribed pain medication more potent than Motrin did not state claim under § 1983); *see also Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir.1986) (prisoner does not have absolute right to treatment of his choice).

In addition, it is noteworthy that plaintiff, on the occasions when he did see Dr. Clark at sick call, *never* complained of pain in his hand. He states in his affidavit that this was because he believed that Dr. Siegrist was the only physician charged with caring for his hand injury. Whatever the reason, however, the fact remains that based on her interactions with plaintiff, Dr. Clark had no reason to believe that plaintiff was suffering from pain in his hand, or that his over-the-counter medications were not adequately relieving his pain. Thus, there is no basis for a claim against her.

## IV.  Claim Against Nurse Stanwick

█ I find that defendant Stanwick is entitled to summary judgment as well. For one thing, much of what I have stated concerning Dr. Clark applies to Stanwick as well. She did provide plaintiff with Tylenol, and there is no evidence that she acted with deliberate indifference to a serious medical need. In addition, as with Dr. Clark, plaintiff admits that he never directly complained to Stanwick of pain in his hand. Plaintiff's Aff. ¶ 17. Although he did apparently complain of pain to some members of the nursing staff, there is no basis upon which to infer that Stanwick should, or even could, have known that the Tylenol or other over-the-counter medication being given to plaintiff was not adequate to control his pain.

In addition, Stanwick clearly did not unilaterally decide to countermand Dr. Siegrist's directives and withhold Darvocet from plaintiff. Rather, she acted in compliance with Dr. Clark's instructions, which, as explained above, were objectively reasonable. As a Jail physician, Dr. Clark, not Dr. Siegrist, was the physician to whom Stanwick had to turn for instructions on patient care, and there is no evidence to suggest that there was any reason that she should have questioned Dr.

Clark's judgment in this regard. While a violation might exist if a nurse, blindly following the instructions of a physician who had not personally observed an inmate or detainee, completely ignored obvious signs of severe pain, that is not what happened here. Plaintiff never said anything to Stanwick about his pain, and from the reports that she received, there was no reason for Stanwick to think that the medication being given to plaintiff was inadequate to relieve his pain. In short, there is no basis for a claim against Stanwick at all.

## CONCLUSION

Defendant Linda Clark, M.D.'s motion for summary judgment (Docket Item 34), and defendant Marilyn Stanwick's motion for summary judgment (Docket Item 39) are granted, and the complaint is dismissed.

IT IS SO ORDERED.