13-1050-cv
StreetEasy, Inc. v. Chertok

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————

August Term, 2013

(Submitted: February 10, 2014    Decided: June 5, 2014)

Docket No. 13-1050-cv

————————

STREETEASY, INC.,

*Plaintiff-Appellee,*

— v. —

DOUGLAS CHERTOK,

*Defendant-Appellant.*[*]

————————

B e f o r e:

JACOBS, LIVINGSTON, and LYNCH, *Circuit Judges*.

————————

---

[*]After the notice of appeal was filed in this case, Plaintiff-Appellee NMD Interactive, Inc. changed its name to StreetEasy, Inc.  The Clerk of Court is directed to amend the official caption to conform with the caption above.

1

Douglas Chertok, *pro se*, New York, New York, *for* Defendant-Appellant.

Emily S. Reisbaum, Isaac Zaur, Clarick Gueron Reisbaum LLP, New York, New York, *for* Plaintiff-Appellee.

_____

Plaintiff-appellee StreetEasy, Inc. sued defendant-appellant Douglas Chertok under (*inter alia*) the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). The parties entered into a settlement agreement on the record before the magistrate judge, and stipulated to a dismissal of the suit with prejudice. When Chertok subsequently moved to vacate the order of dismissal and to rescind the settlement agreement, the United States District Court for the Southern District of New York (Richard J. Sullivan, *Judge*) granted plaintiff's cross-motion to enforce the settlement agreement, imposed sanctions on Chertok for propounding unfounded factual contentions, and ultimately held the defendant in contempt for noncompliance with the court's enforcement order. Because the district court lacked jurisdiction to enforce the parties' settlement agreement, we vacate the orders enforcing the settlement agreement and holding Chertok in contempt; we vacate the

district court's award of sanctions, and remand the case for reconsideration of the proper amount of the sanctions in light of this opinion.

_____

GERARD E. LYNCH, *Circuit Judge*:

This appeal arises out of the attempted resolution of a dispute between a real estate listing website and one of its co-founders over the propriety of actions taken by the co-founder when he separated from the company in 2007, and the validity of corporate actions that occurred before his departure. It requires us to decide whether the district court had jurisdiction to enforce a settlement agreement that resulted in the dismissal of the underlying case. We must also decide whether the district court properly exercised its authority under Federal Rule of Civil Procedure 11 to sanction the defendant for proffering unfounded factual contentions in his filings with and oral representations to the court. Because the order of dismissal failed to retain jurisdiction over enforcement of the parties' settlement agreement, or to incorporate the terms of that agreement, the district court lacked jurisdiction to enforce the agreement. Accordingly, we vacate the district court's orders enforcing the settlement agreement and holding the defendant in contempt for noncompliance. In addition, because the

3

defendant was properly sanctioned for only one of the three factual contentions identified by the district court as the basis for its sanctions award, we vacate that award and remand the matter for reconsideration of the appropriate amount of monetary sanctions in light of this decision.

## BACKGROUND

Appellee StreetEasy, Inc. ("StreetEasy") operates a website that provides real estate listings and related information to brokers and the public.[1]  Appellant Douglas Chertok ("Chertok") co-founded StreetEasy in or around 2005 with nonparties Michael Smith ("Smith"), Anthony Schmitz, and Nataly Kogan.[2]  In the process of establishing StreetEasy, Chertok registered the domain name "streeteasy.com."  In August 2006, StreetEasy sought and obtained $2.5 million in venture capital financing by issuing preferred stock (the "Series A Stock Sale"). Consummation of this transaction required certain actions to be taken by the

---

[1]  Appellee formerly operated under the name NMD Interactive, Inc. but has since changed its name to StreetEasy, Inc.

[2]  Chertok contends that he alone founded StreetEasy.  This contention directly contradicts his representation in the parties' settlement agreement.  Nonetheless, because it is irrelevant to this appeal whether Chertok founded or co-founded StreetEasy, we will not address the matter further.

4

company's board and shareholders.[3] The parties strongly dispute whether these corporate actions were validly effected. While StreetEasy claims that approval was obtained through telephonic board and shareholder meetings in which Chertok participated on August 29, 2006, Chertok contends that approval was fabricated as part of a scheme by Smith — StreetEasy's Chief Executive Officer — to usurp control of the company.

Around the same time that StreetEasy was negotiating the venture capital investment, Chertok's relationship with the company began to sour. StreetEasy alleges that in the summer of 2006 the company discovered that Chertok had embezzled $55,000. Upon making this discovery, the company severed all relations with Chertok, removing him as a co-signer on the company's bank account and later electing a new board of directors that excluded Chertok. After Chertok and StreetEasy parted ways, Chertok allegedly refused to provide the company with possession and control of its domain names, including

---

[3] These actions included approval of a reserve stock split and related adjustments to the company's certificate of incorporation, a change to the number of shares held by each of the company's founders, authorization and issuance of Series A preferred stock, an increase in the size of the board of directors, and approval of documents memorializing the financing.

"streeteasy.com."[4] StreetEasy also claims that in 2011 Chertok attempted to gain access to the company's bank records by falsely representing to bank staff that he was still associated with StreetEasy.

Following these actions by Chertok, StreetEasy initiated suit in the Southern District of New York, asserting claims under the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d), as well as claims for breach of a fiduciary duty and conversion, and requesting a declaratory judgment that Chertok has no continuing relationship with StreetEasy. After commencement of the action, Chertok took the position that the 2006-2007 corporate actions – including the election of a new board of directors – were invalid, because he was allegedly the sole board member at the time of those actions, and he allegedly had not approved them. Chertok agreed, however, to transfer control of the domain names to StreetEasy. StreetEasy then amended its complaint, maintaining its previously asserted claims, and adding claims for a declaratory judgment that the corporate actions taken in August 2006 and StreetEasy's election of a new board of directors in 2007 were valid.

---

[4] In 2011, Chertok also allegedly registered two additional domain names – streeteasy.org and streeteasy.info.

On January 24, 2012, after limited discovery, the parties reached a settlement agreement during a settlement conference with Magistrate Judge Andrew J. Peck. Judge Peck stated the terms of the parties' agreement, and the parties confirmed their consent to the agreement, on the record. Pursuant to the settlement, Chertok agreed, among other things, to (1) transfer to StreetEasy any and all StreetEasy Internet domain names that he had not already transferred, and not to register any similar domain names; (2) acknowledge that his involvement with StreetEasy, other than as a shareholder, ended in October 2007, and that he would not hold himself out as a representative of StreetEasy; (3) "ratif[y] and consent[] to the actions taken at the August 29, 2006 board and shareholder meetings and . . . sign any and all documents required by that, including the action by written consent dated as of August 30, 2006"; (4) acknowledge that the revised certificate of incorporation and bylaws are valid; and (5) sign the Series A Stock Sale documents. In return, StreetEasy agreed, among other things, to create an "About Us" page on its website recognizing Chertok's contribution to the company, and to provide Chertok with certain financial documents each calendar quarter. Both parties also agreed "to execute mutual general releases so that the company releases Mr. Chertok and his

7

company, and Mr. Chertok releases StreetEasy and its management, employees, directors, and shareholders, in the immortal words of the Blumberg form, from any and all causes of action from the beginning of the world to the date of this settlement agreement and release," and that the case would be dismissed with prejudice.

At the conclusion of the conference, Judge Peck informed the parties that they now had "a binding settlement agreement," and that "[n]o settlement agreement documents [were] necessary." While "the releases and series A transaction documents, . . . [and other] paperwork need[ed] to be completed," there was "not going to be drafted a more formal settlement agreement," because "[t]he transcript constitute[d] the agreement." By order dated January 25, 2012, Judge Peck dismissed the action with prejudice. That order states:

> Based on the settlement agreement reached by all parties and transcribed by the court reporter on January 24, 2012, and on the stipulation of the parties pursuant to 28 U.S.C. § 636(c), IT IS HEREBY ORDERED THAT this action is dismissed with prejudice and without costs. Any pending motions are to be terminated as moot.

Unfortunately, the repose anticipated by the parties' settlement agreement did not last long. Within days of entering the settlement agreement, StreetEasy

sought Chertok's signature on a number of documents associated with the Series A Stock Sale, including an August 30, 2006 Action by Written Consent in Lieu of a Meeting of Stockholders and an August 30, 2006 Written Consent in Lieu of Special Meeting of Board of Directors. Chertok's counsel then sought and received from StreetEasy the closing binder for the 2006 Series A Stock Sale that had been prepared by StreetEasy's former legal counsel Proskauer Rose LLP ("Proskauer"). The closing binder contained a number of documents that, in Chertok's view, substantiated his earlier contention that the 2006-2007 corporate actions were unauthorized. In particular, the binder included Proskauer's written opinion that the 2006 Series A Stock Sale was properly approved by the stockholders by a written consent dated August 30, 2006 ("Proskauer Opinion").[5] It also contained partially executed copies of Backup and Compliance Certificates related to the Series A Stock Sale.

On May 9, 2012, after relieving counsel who had represented him during the settlement, Chertok moved, pro se, to vacate the order of dismissal and rescind the settlement agreement pursuant to Federal Rule of Civil Procedure

---

[5] Because Chertok had not signed the written stockholder consent, he contends that the Proskauer Opinion "fraudulent[ly]" stated that the transaction was properly approved.

60(b). Chertok argued that the settlement should be rescinded because StreetEasy had fraudulently concealed the Proskauer Opinion and the Backup and Compliance Certificates from him prior to the settlement, and that these documents constituted newly discovered evidence of which Chertok was justifiably ignorant that would have altered the outcome of the case. StreetEasy responded with a motion to compel compliance with the parties' settlement agreement, and soon thereafter moved for sanctions against Chertok, seeking the fees and costs associated with litigating Chertok's Rule 60(b) motion and the motion for sanctions itself. StreetEasy argued that sanctions were justified because Chertok's motion contained deliberate falsehoods and lacked a reasonable basis in law. On March 18, 2013, the district court denied Chertok's Rule 60(b) motion, granted StreetEasy's motion to enforce the settlement agreement, and granted StreetEasy's motion for sanctions.

Thereafter, the parties continued to disagree about the scope of Chertok's obligations under the settlement agreement. On April 2, Chertok was ordered to show cause why he should not be held in contempt for refusing to comply with the Court's March 18 Order directing his compliance with the settlement agreement, and on April 25 he was held in contempt, fined $5,000 a day for his

10

noncompliance, and ordered to pay fees and costs incurred by the plaintiff as a result of Chertok's noncompliance. That evening, Chertok signed and delivered a mutual release contemplated by the settlement agreement. The following day, the district court issued an order relieving Chertok from the contempt order and instructing him to pay $5,000 for his one day in contempt. Finally, on September 25, the district court ordered Chertok to pay $69,773.75 in attorneys' fees and costs to the plaintiff, representing the Rule 11 sanctions imposed by the court and the attorneys' fees incurred by and awarded to the plaintiff after the Order to Show Cause hearing. Chertok now appeals the district court's orders enforcing the parties' settlement agreement, imposing sanctions, holding him in contempt, and setting the amount of attorneys' fees and costs to be paid to plaintiff-appellee.[6]

---

[6] On appeal, Chertok does not challenge the district court's decision to deny his Rule 60(b) motion. In his opening brief, Chertok raised for the first time an argument that the order of dismissal should be vacated and the settlement rescinded because the plaintiff-appellee allegedly defrauded the district court, but he has since withdrawn that argument.

11

## DISCUSSION

I.     <u>Enforcement of Settlement and Contempt</u>[7]

"A federal court does not automatically retain jurisdiction to hear a motion to enforce or otherwise apply a settlement in a case that it has previously dismissed." <u>In re Am. Express Fin. Advisors Sec. Litig.</u>, 672 F.3d 113, 134 (2d Cir. 2011) (<u>citing</u> <u>Kokkonen v. Guardian Life Ins. Co. of Am.</u>, 511 U.S. 375, 380-82 (1994)). "Such motions are essentially state-law contract claims." <u>Id</u>. Where, however, the federal court makes "the parties' obligation to comply with the terms of the settlement agreement . . . part of the order of dismissal — either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order" — that court is a proper forum for litigating a breach of the settlement agreement. <u>Id</u>. (<u>quoting</u> <u>Kokkonen</u>, 511 U.S. at 381) (ellipsis in original); <u>accord</u> <u>Perez v. Westchester County Dep't of Corr.</u>, 587 F.3d 143, 151-53 (2d Cir. 2009). In such cases the district court "necessarily ma[kes] compliance with the terms of the [settlement] agreement a part of its order so that 'a breach of the agreement

---

[7] In reviewing a district court's decision whether to enforce a settlement agreement, we review its findings of fact with respect to the agreement for clear error and its legal conclusions de novo. <u>See</u> <u>Omega Eng'g, Inc. v. Omega, S.A.</u>, 432 F.3d 437, 443 (2d Cir. 2005).

12

would be a violation of the order,'" Roberson v. Giuliani, 346 F.3d 75, 82 (2d Cir. 2003) (quoting Kokkonen, 511 U.S. at 381), and the district court may therefore enforce the settlement as an exercise of its ancillary jurisdiction to "manage its proceedings, vindicate its authority, and effectuate its decrees," Kokkonen, 511 U.S. at 380.

Here, the district court concluded that it had jurisdiction to enforce the terms of the parties' settlement agreement because the dismissal order "[p]lainly . . . incorporated the Settlement." We disagree. The order dismissing the underlying case provided that "[b]ased on the settlement agreement reached by all parties and transcribed by the court reporter on January 24, 2012, . . . IT IS HEREBY ORDERED THAT this action is dismissed with prejudice and without costs." The order does not expressly retain jurisdiction over enforcement of the agreement, nor does it incorporate any of the terms of that agreement. Instead, it merely acknowledges the existence of the settlement that precipitated the dismissal.[8] The parties' settlement agreement, in turn, says nothing about the

_____

[8] Although Kokkonen "does not state how a district court may incorporate a settlement agreement in a dismissal order, the case does suggest the agreement must be 'embodied' in the dismissal order." Schaefer Fan Co. v. J & D Mfg., 265 F.3d 1282, 1286 (Fed. Cir. 2001) (quoting Miener v. Mo. Dep't of Mental Health, 62 F.3d 1126, 1128 (8th Cir. 1995)). At least one court has suggested that the full text of the settlement agreement should be included in the order of dismissal to

district court retaining jurisdiction to adjudicate disputes arising out of the agreement.[9]  These circumstances are insufficient to confer ancillary jurisdiction on the district court to adjudicate what remains a state law contract claim.  See, e.g., Scelsa v. City Univ. of New York, 76 F.3d 37, 41 (2d Cir. 1996); see also In re Phar-Mor, Inc. Sec. Litig., 172 F.3d 270, 274 (3d Cir. 1999) ("The phrase 'pursuant to the terms of the Settlement' [in dismissal order] fails to incorporate the terms of the Settlement Agreement into the order because a dismissal order's mere reference to the fact of settlement does not incorporate the settlement agreement in the dismissal order."(internal quotation marks and alteration omitted)).

In opposition, StreetEasy argues that the actions of Chertok and the district court confirm that the settlement was incorporated into the dismissal order.  In particular, StreetEasy points out that Chertok himself repeatedly asked the

constitute incorporation, Bd. of Trs. v. Madison Hotel, Inc., 97 F.3d 1479, 1484 n.8 (D.C. Cir. 1996), and another has indicated that physical attachment of a settlement agreement to a dismissal order would not be enough, Hospitality House, Inc. v. Gilbert, 298 F.3d 424, 431 (5th Cir. 2002).  We need not define the full range of circumstances that would constitute "incorporation" of a settlement's terms for purposes of conferring ancillary jurisdiction on a district court.

[9]  Appellee cites cases in which dismissal was entered "pursuant to" settlement agreements expressly providing that federal courts would retain jurisdiction over settlement-related disputes.  No such provisions are implicated here.  See, e.g., Schaefer Fan Co., 265 F.3d at 1286-87; Interspiro USA, Inc. v. Figgie Int'l Inc., 18 F.3d 927, 930 (Fed. Cir. 1994).

district court to enforce the settlement agreement, that the magistrate judge indicated that he would retain a copy of the settlement transcript in his chambers' file, and that the district court plainly thought it had jurisdiction to enforce the agreement because it entered the enforcement order. These arguments are unpersuasive. The order of dismissal unambiguously omits to retain jurisdiction or to incorporate the terms of the settlement. After-the-fact statements and actions of the parties, and even of the district court, cannot create ancillary jurisdiction where such jurisdiction was not retained upon dismissal.[10] Cf. Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) ("[S]ubject matter jurisdiction may not be created by estoppel or consent of the parties."); see also In re Phar-Mor, Inc. Sec. Litig., 172 F.3d at 275 ("[U]nder Kokkonen, unexpressed intent is insufficient to confer subject matter jurisdiction.").

In sum, as in Kokkonen, "the only order here was that the suit be dismissed, a disposition that is no way flouted or imperiled by the alleged breach of the settlement agreement." See Kokkonen, 511 U.S. at 380. Because the district court lacked ancillary jurisdiction or any other basis for jurisdiction over

_____

[10] Nor does the magistrate judge's indication that he would keep a copy of the settlement in his chambers' file manifest the judge's intent to retain jurisdiction over the enforcement of the settlement. In context, the statement simply assured the parties that the settlement would be kept confidential.

15

appellee's motion to enforce the settlement agreement, we vacate the district court's orders enforcing the settlement agreement and holding Chertok in contempt for noncompliance.[11] See Willy v. Coastal Corp., 503 U.S. 131, 139 (1992) ("Given that civil contempt is designed to coerce compliance with the court's decree, it is logical that the order itself should fall with a showing that the court was without authority to enter the decree."); Tekkno Labs., Inc. v. Perales, 933 F.2d 1093, 1099 (2d Cir. 1991) ("Where a federal court lacks subject matter jurisdiction to grant a particular type of injunction, it also lacks the power to issue a civil contempt order for noncompliance with that injunction.").

## II.    Rule 11 Sanctions

We review a district court's imposition of sanctions under Federal Rule of Civil Procedure 11 for abuse of discretion, "mindful that a material error of law or a clearly erroneous assessment of evidence is an abuse of discretion."

---

[11] After the district court ordered enforcement of the settlement agreement, Chertok took steps to comply. For instance, he delivered signed copies of certain transaction documents to StreetEasy and — after the district court held him in contempt — executed a mutual release. Chertok asks us to declare these actions void. We will not do so. Chertok points to no legal authority that obliges us to adjudicate the legal effect that the district court's unauthorized orders have on actions taken by Chertok consistent with the settlement agreement. If Chertok wishes to further litigate the legal effect of actions taken in furtherance of the settlement agreement, the proper forum, as he has correctly insisted, is the state court.

16

Derechin v. State Univ. of New York, 963 F.2d 513, 516 (2d Cir. 1992) (internal

quotation marks omitted).  Under Rule 11(b), an unrepresented party who

presents a written motion to the court certifies that:

> (1) [the motion] is not being presented for any improper
> purpose, such as to harass, cause unnecessary delay, or
> needlessly increase the cost of litigation;
> (2) the claims, defenses, and other legal contentions are
> warranted by existing law or by a nonfrivolous
> argument for extending, modifying, or reversing
> existing law or for establishing new law;
> (3) the factual contentions have evidentiary support or,
> if specifically so identified, will likely have evidentiary
> support after a reasonable opportunity for further
> investigation or discovery; and
> (4) the denials of factual contentions are warranted on
> the evidence or, if specifically so identified, are
> reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).  A false certification violates Rule 11(b), and the district

court has discretion to impose sanctions to "deter repetition of the conduct or

comparable conduct by others similarly situated."  Id. 11(c)(4).  When sanctions

are imposed on motion of an adversary, "[t]he standard for triggering the award

of fees under Rule 11 is objective unreasonableness and is not based on the

subjective beliefs of the person making the statement."  Star Mark Mgmt., Inc. v.

Koon Chun Hing Kee Soy & Sauce Factory, Ltd., 682 F.3d 170, 177 (2d Cir. 2012)

(internal quotation marks omitted).  With respect to factual contentions,

17

"sanctions may not be imposed unless a particular allegation is utterly lacking in support."  Storey v. Cello Holdings, L.L.C, 347 F.3d 370, 388 (2d Cir. 2003) (internal quotation marks omitted).

On StreetEasy's motion, the district court sanctioned Chertok pursuant to Rule 11 for propounding unsupported factual contentions in his submissions and oral representations to the court.  In particular, the district court identified three sanctionable instances: (1) Chertok "claimed to have had no notice of the Backup and Compliance Certificates, despite admitting to having received copies of those certificates as email attachments"; (2) Chertok willfully ignored plain language in the Settlement requiring him to sign "the action by written consent dated as of August 30, 2006 in order to argue that he was not obligated to sign such a form"; and (3) Chertok misrepresented that the parties' settlement was non-binding even though Magistrate Judge Peck stated unequivocally that the settlement agreement would be binding even without a written agreement.  We consider each of these instances in turn.  We share the district court's desire to check Chertok's less-than-straightforward conduct, but for the following reasons we conclude that the district court erred in sanctioning Chertok on the basis of two of the identified instances.  We also conclude, however, that the district court

18

acted within its discretion in sanctioning Chertok for his misrepresentation of what documents he agreed to sign pursuant to the settlement agreement. Accordingly, we vacate the district court's award of sanctions and remand the matter for reconsideration of the appropriate sanction amount in light of this decision.

A. Notice of the Backup and Compliance Certificates

In August and September 2006, in connection with the Series A Stock Sale, Smith sent Chertok a number of documents and signature pages to sign. In response, Chertok requested to see certain documents before signing the signature pages. On September 9 and 11, Smith sent Chertok most of these documents as email attachments. Among the attached documents were a Compliance Certificate and a Backup Certificate.[12] It is undisputed that the

---

[12] The Backup Certificate is a document addressed to Proskauer to assist the firm in its preparation of a legal opinion regarding the Series A Stock Sale. It represents to Proskauer, among other things, that the Written Consent in Lieu of a Special Meeting of the Board of Directors dated August 30, 2006 is "true, complete and correct." Chertok claims that the Backup Certificate's representation was false because he had not signed the written consent. The Compliance Certificate is a document that was to be delivered to Series A Stock purchasers stating that StreetEasy had performed its obligations under the Stock Purchase Agreement, which included delivering the Proskauer Opinion to all Series A Stock purchasers. Chertok claims the Compliance Certificate's representation was false because his company — Vast Ventures — was a Series A Stock purchaser, but he never received a copy of the Proskauer Opinion until

19

versions of these certificates that Chertok received in 2006 were unexecuted.

Following the parties' settlement, StreetEasy forwarded partially executed

versions of the Compliance and Backup Certificates to Chertok.  These versions

of the certificates reflected the fact that Smith had already signed the certificates

as of August 31, 2006 — days *before* Smith emailed the unexecuted versions of

these certificates to Chertok in September 2006.  Based on these circumstances,

Chertok argued to the district court that Smith purposely concealed the executed

versions from him in furtherance of Smith's scheme to usurp control of the

company.  In his Rule 60(b) motion, Chertok stated that he saw the executed

signature pages of these certificates for the first time post-settlement and was not

previously aware of their existence.  He further argued that "[h]ad [he] known

the Backup Certificate or Compliance Certificate were [sic] executed, [he] would

not have settled," and that the settlement should therefore be rescinded.

The district court sanctioned Chertok for claiming to have had no notice of

the Backup and Compliance Certificates, despite admitting having received

copies of those certificates as email attachments in 2006.  In other words, the

district court concluded that Chertok represented that he had no notice of the

after he settled with StreetEasy in 2012.

20

Backup and Compliance Certificates and that this representation was utterly

lacking in support. That conclusion is erroneous. Chertok never represented that

he lacked notice of the existence of the Backup and Compliance Certificates.

Instead, Chertok consistently represented that he lacked notice of the executed or

signed versions of these certificates.

Although the district court correctly concluded that Chertok's alleged

unawareness of the executed versions of the certificates did not warrant Rule

60(b) relief, the standards for Rule 60(b) relief and Rule 11 sanctions are not the

same. That the failure to provide Chertok with executed copies of the documents

did not entitle Chertok to Rule 60(b) relief does not mean that Chertok's claim not

to have received such copies was factually false. In order for a factual contention

to be sanctionable under Rule 11, it must be utterly lacking in support. Kiobel v.

Millson, 592 F.3d 78, 81 (2d Cir. 2010). In this case, Chertok sufficiently

supported his contention that he was unaware that Smith had executed the

Backup and Compliance Certificates until he received the executed versions of

those certificates post-settlement.[13] Because the district court's sanction award

---

[13] Because the district court sanctioned Chertok for making unsupported *factual* contentions, we need not consider whether Chertok's attempt to obtain Rule 60(b) relief on this basis constituted a *legally* frivolous argument.

21

rested on a clearly erroneous assessment of the evidence, it must be vacated to the extent it is founded on Chertok's supposed misrepresentation regarding the Backup and Compliance Certificates.

B.     Action by Written Consent dated August 30, 2006

The district court also sanctioned Chertok for willfully ignoring the plain language of the settlement in arguing that he was not obligated to sign an action by written consent dated August 30, 2006. In the parties' settlement agreement, Chertok "ratifie[d] and consent[ed] to the actions taken at the August 29, 2006 board and shareholder meetings and [agreed to] sign any and all documents required by that, including the action by written consent dated as of August 30, 2006." A few days after StreetEasy's suit was dismissed, StreetEasy forwarded two written consents dated August 30, 2006 for Chertok's signature. Chertok refused to execute those consents and in his Rule 60(b) motion he argued that the settlement did not require him to execute either of them because the settlement did not "contemplate that he was to consent to meetings which [StreetEasy] alleged never took place." J.A. 75 (emphasis omitted).

The district court did not abuse its discretion in sanctioning Chertok for his mischaracterization of the parties' settlement. Chertok's contention that the

22

settlement agreement did not require him to execute either of these documents is flatly contradicted by the record. In the agreement, Chertok expressly agreed to execute an action by written consent dated August 30, 2006. He offers no logical reason to believe that neither of the documents proffered by StreetEasy constituted the action by written consent that he agreed to execute.[14] On appeal, Chertok argues that he believed the consent described in the settlement referred to a document labeled Exhibit A in the minutes of an August 29, 2006 board meeting, and that Exhibit A was a different written consent from the ones StreetEasy requested he execute after the settlement.[15] Chertok's asserted belief is objectively unreasonable. Chertok offers no evidence that the consent referenced in the board minutes is meaningfully different from the consents presented for his signature post-settlement. Moreover, although he claims that he could not have guessed that StreetEasy would ask him to execute the shareholder and

[14] Although the settlement transcript referred to the action by written consent dated August 30, 2006, in the singular, this does not assist Chertok, as he represented that the settlement agreement did not obligate him to execute either of the written consents dated August 30, 2006.

[15] Confusingly, Chertok claims that Exhibit A referenced in the board minutes does not exist and that its nonexistence somehow strengthens his contention that Exhibit A was the consent described in the settlement. Chertok's insistence that the parties agreed to execute a nonexistent written consent merely serves to highlight the objective unreasonableness of his contentions.

board written consents dated August 30, 2006, his proclaimed belief is not credible. Indeed, he admits that Smith sent him these written consents and asked him to sign them as early as September 2006. Under the circumstances, we conclude that the district court did not abuse its discretion in sanctioning Chertok for his mischaracterization of the parties' settlement agreement.

C.      Binding Nature of Settlement Agreement

Finally, the district court sanctioned Chertok for representing that the parties' settlement was nonbinding absent a writing even though Magistrate Judge Peck stated unequivocally that the recorded transcript of the parties' settlement would itself constitute a binding settlement agreement and no formal writing would be necessary. During the parties' settlement conference, Judge Peck described the material terms of the settlement on the record. At no point did Judge Peck state that the settlement agreement would be non-binding absent a writing, and indeed he indicated the exact opposite. Following Judge Peck's description of the terms of the settlement, Chertok and Smith (on behalf of StreetEasy) expressly confirmed their agreement. Neither party indicated that the agreement would only take effect upon execution of a written document. Despite the fact that the parties' agreement did not expressly state that it would

only become binding upon incorporation in a written document, during oral

argument for Chertok's Rule 60(b) motion, Chertok represented to the district

court that the parties' settlement was "not binding absent a writing because

[StreetEasy] expressed its intent not to be bound in the release" it forwarded to

Chertok for his signature post-settlement, and because "the record contemplates

a writing."

Chertok argues that the district court abused its discretion in sanctioning

him for this statement because it was not utterly lacking in factual support and

because he did not receive notice that this statement allegedly violated Rule

11(b).  We agree that Chertok did not receive adequate notice that his

representation about the non-binding nature of the parties' settlement would

expose him to sanctions, and we therefore do not decide whether his statement

constituted an unfounded factual assertion.[16]

---

[16]  Although the district court construed Chertok's statement as a factual
representation about whether a written document was an express condition
precedent to the formation of the parties' agreement, it can also be understood as
a legal argument about whether the agreement would be binding under New
York law or federal common law in light of the fact that some of the terms of the
mutual release which the parties agreed to execute as part of the settlement were
not fully described on the record.  See Ciaramella v. Reader's Digest Ass'n, Inc.,
131 F.3d 320, 322, 326 (2d Cir. 1997); Velazquez v. St. Barnabas Hosp., 13 N.Y.3d
894, 895 (2009).  Because the district court's decision to sanction Chertok for this
representation cannot be upheld due to lack of notice, we need not decide

In accordance with principles of due process and Rule 11 itself, the subject of a sanctions motion "must receive specific notice of the conduct alleged to be sanctionable and the standard by which the conduct will be assessed, and an opportunity to be heard on that matter." Ted Lapidus, S.A. v. Vann, 112 F.3d 91, 97 (2d Cir. 1997); see also Fed. R. Civ. P. 11(c). "Only conduct explicitly referred to in the instrument providing notice is sanctionable." Star Mark Mgmt., Inc., 682 F.3d at 175 (internal quotation marks omitted). In this case, Chertok received neither a notice that the district court considered his representation sanctionable nor an opportunity to explain why he should not be sanctioned for the representation. Chertok made the sanctioned representation during the oral argument for his Rule 60(b) motion. Although the district judge expressed skepticism about the validity of Chertok's argument that the settlement agreement was nonbinding, he at no point indicated that Chertok risked sanctions by continuing to press it. Furthermore, StreetEasy's Rule 11 motion — the instrument by which Chertok received notice of his sanctionable conduct — did not identify this specific representation, or even Chertok's general argument

---

whether the district court properly construed Chertok's statement as a factual misrepresentation or whether Chertok's statement could be sanctioned as a legally frivolous argument.

26

about the non-binding nature of the parties' settlement, as sanctionable conduct. By sanctioning Chertok for conduct beyond that specified in StreetEasy's motion, the district court failed to afford him the notice and opportunity to be heard required by due process and Rule 11. See Ted Lapidus, S.A., 112 F.3d at 97 (sanctions vacated where district court sanctioned conduct "beyond the conduct specified in [adversary's] Rule 11 motion").[17] Accordingly, the district court's order awarding sanctions must be vacated insofar as it relied on Chertok's representation about the nonbinding nature of the parties' settlement agreement.

## CONCLUSION

For the foregoing reasons, the district court's orders enforcing the parties' settlement agreement and holding the defendant in contempt for noncompliance are VACATED. The district court's order awarding sanctions is VACATED. The order setting the amount of fees and costs awarded to the plaintiff is VACATED and this matter is REMANDED for reconsideration of the appropriate amount of monetary sanctions in light of this decision.

---

[17] Even when a district court initiates sanctions sua sponte, it must enter an order directing the party "to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3); see also In re Pennie & Edmonds LLP, 323 F.3d 86, 89 (2d Cir. 2003). The district court entered no such order here.