14-1958-cv
*Hendrickson v. United States*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2014

(Argued: March 25, 2015          Decided: June 30, 2015)

No. 14-1958-cv

————————————————————————

WILLIAM R. HENDRICKSON AND PATRICIA HENDRICKSON,
*Plaintiffs-Appellees*,

-v.-

UNITED STATES OF AMERICA,
*Defendant-Appellant*.

————————————————————————

Before:        WINTER, LIVINGSTON, and CHIN, *Circuit Judges*.

Appeal from the March 25, 2014 and May 20, 2014 judgments of the United States District Court for the Western District of New York (Michael A. Telesca, *Judge*) granting Plaintiffs-Appellees' motion to enforce a settlement agreement signed by Plaintiffs and the United States in 1985. The United States argues that the district court lacked jurisdiction to enforce the settlement agreement because the district court's 1985 dismissal order failed expressly to reserve jurisdiction or to incorporate the terms of the settlement agreement. We agree. Under *Kokkonen v. Guardian Life Insurance Company of America*, 511 U.S. 375 (1994), the district court's signature on the settlement agreement, dated more than three weeks after the case was dismissed, was insufficient to retain jurisdiction over the case.

Accordingly, we VACATE the judgment below and REMAND with instructions to transfer this matter to the Court of Federal Claims.

STEPHEN G. SCHWARZ, Faraci Lange, LLP, Rochester, NY, *for Plaintiffs-Appellees*.

JOSHUA WALDMAN (Michael S. Raab, *on the brief*), Civil Division, Appellate Staff, U.S. Department of Justice, Washington, D.C., *for* Joyce R. Branda, Acting Assistant Attorney General, *and* William J. Hochul, Jr., United States Attorney, *for Defendant-Appellant*.

DEBRA ANN LIVINGSTON, *Circuit Judge*:

This appeal arises from an attempt to enforce a settlement agreement signed by Plaintiffs-Appellees William and Patricia Hendrickson, the United States, and the district court more than thirty years ago. In 1985, the district court clearly indicated its approval of the terms of a settlement agreement resolving Plaintiffs' suit against the United States; in 2013, Plaintiffs allege, the United States fell out of compliance with certain payment obligations contained in that agreement. This case requires us to decide whether the actions taken by the district court in 1985—verbally expressing approval of the settlement terms, dismissing the case on the merits in a brief order, and subsequently signing and

2

so-ordering the parties' settlement agreement—sufficed to retain jurisdiction over the enforcement of the agreement. Because the district court's order of dismissal failed expressly to retain jurisdiction or to incorporate the terms of the agreement, and because the district court's so-ordering of the settlement agreement took place after the court had already relinquished jurisdiction over the case and was thus ineffective to retain it, we conclude that the district court did not have jurisdiction over the enforcement of the settlement agreement. Accordingly, we vacate the district court's orders enforcing the agreement and denying the United States' motion for reconsideration, and we remand to the district court with instructions to transfer this case to the Court of Federal Claims.

**BACKGROUND**

In 1982, William Hendrickson and Patricia Hendrickson brought an action against the United States in the United States District Court for the Western District of New York pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Plaintiffs sought monetary damages from the United States for injuries sustained in an automobile accident. The case proceeded to trial in 1985. After two and a

half days of trial, however, on March 29, 1985, the parties informed the district court that they had reached a settlement.

At the March 29 hearing, the district court (Michael A. Telesca, *Judge*), informed that the United States was to provide periodic future payments as part of the settlement, told the parties to "[s]pread the settlement on the record." J.A. 9. After hearing the general terms of the agreement and ascertaining that Plaintiffs consented to them, the district court stated, "I will approve it. I will dismiss the action and I think it's an excellent settlement for you." J.A. 14. The court then informed counsel that an order of discontinuance would be entered, "so there won't be anything else for you to do here. This matter is settled here and discontinued off our calendar. Whatever paperwork you have to do, do it between the two of you." J.A. 15.

A few days later, on April 2, 1985, the Clerk of Court entered an order of dismissal signed by the district judge. The order read, in its entirety, "The Court having been advised by the counsel for the parties that the above action has been settled; IT IS ORDERED that this action is hereby dismissed without costs and on the merits." J.A. 17. The April 2 order of dismissal is the last entry to appear on the district court's docket sheet.

On April 29, 1985, nearly a month later, the parties signed and submitted to the district court a "Stipulation for Compromise Settlement Pursuant to 28 U.S.C. § 2677" ("Settlement Agreement") that provided the final terms of the settlement, including the precise amounts of the payments the United States had agreed to make. Paragraph 3 of the Settlement Agreement provided that "[t]he execution of this agreement and approval by the Court to provide such future periodic payments shall constitute a complete release" regarding any future claims arising from the events that had resulted in Plaintiffs' pending suit. J.A. 19. The district court signed the Settlement Agreement on the same date it was submitted, underneath a notation that read "SO ORDERED." J.A. 25. The Settlement Agreement, for unknown reasons, does not appear on the district court's docket sheet. Pursuant to its terms, the United States agreed, *inter alia*, to provide for periodic future payments to Plaintiffs by purchasing an annuity from Executive Life Insurance Company of New York ("ELNY"). The United States purchased such an annuity, and for 28 years Plaintiffs received monthly payments from ELNY.

The matter returned to federal court in October 2013, almost 30 years after the parties' settlement, when Plaintiffs filed a motion in the Western District, on

5

the same docket, styled a "Motion to Enforce a Compromise Settlement."[1] In support of this motion, Plaintiffs filed an affidavit stating that ELNY was undergoing liquidation, and that Plaintiffs' annuity payments had been reduced by fifty percent as a result. Plaintiffs alleged that, pursuant to the 1985 Settlement Agreement, the United States was obligated to make up the difference between the periodic payments promised in the agreement and the now-reduced amounts being paid by ELNY. The United States, in response, urged the district court to deny Plaintiffs' motion for lack of subject matter jurisdiction, arguing that the district court had failed, in 1985, to take the steps required to maintain jurisdiction over enforcement of the Settlement Agreement under the Supreme Court's decision in *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994).[2]

---

[1] As we have noted before, the Federal Rules of Civil Procedure do not provide for such a motion. *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 124 n.9 (2d Cir. 2011). Nevertheless, we have over the years reviewed judgments ruling on purported motions to enforce without addressing the "potential error of terminology," *id.*; *see, e.g.*, *StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 306 (2d Cir. 2014), and, concluding that the district court's judgment presents an appealable question, we do so here.

[2] After briefing had closed before the district court, the United States submitted a letter raising for the first time the argument that the Federal Tort Claims Act's waiver of sovereign immunity does not apply to an action seeking to enforce a settlement agreement. Because we decide that the district court lacked subject matter jurisdiction over this case, we need not and do not reach the sovereign immunity issues raised by the United States and decided by the district court.

6

The district court, in an order dated March 25, 2014, concluded that it had retained jurisdiction to enforce the 1985 Settlement Agreement by indicating its approval of the terms of the parties' settlement, and particularly by so-ordering the Settlement Agreement itself on April 29, 1985. Relying on our decision in *Perez v. Westchester County Dept. of Corrections*, 587 F.3d 143 (2d Cir. 2009), which addresses the "prevailing party" requirement for fee awards pursuant to 42 U.S.C. § 1988(b), the court held that "in cases where a Judge has made the actual settlement agreement an Order of the Court, . . . the court has placed its 'judicial imprimatur' on the agreement, and therefore may act to enforce the agreement." *Hendrickson v. United States*, No. 82-cv-621T, 2014 WL 1224715, at *3 (W.D.N.Y. Mar. 25, 2014). Proceeding to the merits, the district court held that the Settlement Agreement obligated the United States to ensure the ongoing future payments undertaken by ELNY, and it ordered the United States to pay the difference between the amounts contained in the Settlement Agreement and the benefits that the Plaintiffs were then receiving from ELNY. *Id.* at *7. The United States moved for reconsideration, which motion the district court denied in an order dated May 20, 2014. *Hendrickson v. United States*, No. 82-cv-621T, 2014 WL

7

2112575 (W.D.N.Y. May 20, 2014). The United States timely appealed both the March 25 and May 20 orders.

## DISCUSSION

### I.

We review *de novo* a district court's legal determination regarding its own subject matter jurisdiction. *Rogers v. Petroleo Brasileiro, S.A.*, 673 F.3d 131, 136 (2d Cir. 2012). "Federal courts are courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen*, 511 U.S. at 377 (citation omitted). In keeping with this principle, a district court "does not automatically retain jurisdiction to hear a motion to enforce" a settlement agreement simply by virtue of having disposed of the original case. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 134 (2d Cir. 2011). Instead, a motion to enforce a settlement agreement is fundamentally "a claim for breach of a contract, part of the consideration of which was dismissal of an earlier federal suit," *Kokkonen*, 511 U.S. at 381, and therefore "requires its own basis for jurisdiction," *id.* at 378.

In some circumstances, that basis may be found in the doctrine of ancillary jurisdiction, which allows a district court to decide matters that are "factually

8

interdependent" with another matter before the court, or to take actions necessary "to manage its proceedings, vindicate its authority, and effectuate its decrees." *Id.* at 379-80. But to retain ancillary jurisdiction over enforcement of a settlement agreement, *Kokkonen* prescribes that a district court's order of dismissal must either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in the order. *Id.* at 381; *see also StreetEasy, Inc. v. Chertok*, 752 F.3d 298, 305 (2d Cir. 2014) (reiterating these two *Kokkonen* alternatives).

The district court in this case, and Plaintiffs in their briefing, endeavor to fashion a third category of cases in which a district court may retain ancillary jurisdiction to enforce a settlement agreement: cases in which "the court has placed its 'judicial imprimatur' on the agreement." *Hendrickson*, 2014 WL 1224715, at *3. The district court relied on our decision in *Perez v. Westchester County*, 587 F.3d 143, which it construed as "holding that where the District Court Judge 'judicially sanctioned' the settlement, the court retained jurisdiction over enforcement of the settlement." *Hendrickson*, 2014 WL 1224715, at *3. This characterization, however, turns *Perez* completely on its head. *Perez* is a case about the "prevailing party" requirement under federal fee-shifting statutes, and

9

its concern is with the Supreme Court's directive that a party must "achieve some material alteration of the legal relationship of the parties" which is "judicially sanctioned" in order to qualify as a "prevailing party." *Perez*, 587 F.3d at 149 (quoting *Roberson v. Giuliani*, 346 F.3d 75, 79 (2d Cir. 2003)); *see Buckhannon Bd. & Care Home, Inc. v. W. Va. Dept. of Health & Human Res.*, 532 U.S. 598, 604-05 (2001)). Having determined in *Perez* that the district court's order of dismissal satisfied *Kokkonen* by "explicitly . . . incorporat[ing] the terms of the agreement" between the parties, *Perez*, 587 F.3d at 151 n.6, we found that to be strong evidence that the settlement "bore the imprimatur of the District Court," and therefore that the plaintiffs were "prevailing parties" entitled to receive attorneys' fees, *id.* at 152-53. Thus, *Perez* does *not* categorically say that where there is "judicial imprimatur," there is also jurisdiction under *Kokkonen*. Rather, it says the near reverse: that where there is jurisdiction under *Kokkonen*, this constitutes strong evidence of "judicial imprimatur" for fee-shifting purposes.

We acknowledge that dicta in our decision in *In re American Express Financial Advisors Securities Litigation*, 672 F.3d 113, which appears similarly to mischaracterize *Perez*, may have encouraged the district court's mistake. The district court's order of dismissal in *In re American Express* explicitly retained

10

jurisdiction over "all matters relating to this Action and the Settlement," clearly satisfying the first prong of *Kokkonen*. *Id.* at 134. We noted as an aside, however, that *Perez* had indicated that "where 'there is ample evidence that the District Court intended to place its judicial imprimatur on a settlement,' the court retains jurisdiction to oversee the enforcement of the agreement." *Id.* (alterations omitted) (quoting *Perez*, 587 F.3d at 152). We could not have meant this observation, however, to establish a new route to retaining jurisdiction in addition to those prescribed by *Kokkonen*. Allowing a district court to retain jurisdiction on such a basis would directly contradict *Kokkonen*'s admonition that a "judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order" and thus to create ancillary jurisdiction. *Kokkonen*, 511 U.S. at 381. In addition, as discussed above, construing *Perez*—a fee-shifting case—to create a jurisdictional rule clearly would be incompatible with *Perez* itself. And if there were any lingering doubt as to the legal force of this particular *obiter dictum*, it should have been removed by our most recent ancillary jurisdiction decision, *StreetEasy, Inc. v. Chertok*, which correctly recites *Kokkonen*'s two options for retaining jurisdiction, and makes no mention of the concept of "judicial imprimatur." 752 F.3d at 306.

11

The district court's conclusion that its own stamp of "judicial imprimatur" alone could support its exercise of ancillary jurisdiction over the settlement agreement was therefore error. We take this opportunity to reaffirm *Kokkonen*'s longstanding rule that there are only two ways in which a district court may retain ancillary jurisdiction to enforce the terms of a settlement agreement: it may "expressly retain jurisdiction over enforcement of the agreement" in an order of the court, or it may "incorporate . . . the terms of that agreement" in such an order. *StreetEasy*, 752 F.3d at 305. "[M]erely acknowledg[ing] the existence of the settlement that precipitated the dismissal" will not suffice, *id.*, and neither will the "unexpressed intent" of the parties or the district court, *In re Phar-Mor, Inc. Sec. Litig.*, 172 F.3d 270, 275 (3d Cir. 1999), *quoted in StreetEasy*, 752 F.3d at 306. We must thus decide whether either of *Kokkonen*'s two ancillary jurisdiction requirements was satisfied here.

**II.**

The dismissal order in this case, entered on April 2, 1985, mentions that the parties had reached a settlement, but it does not contain any language retaining jurisdiction over the enforcement of that settlement. And although the general terms of the settlement were known to the court, having been spread on the

12

record at a recent hearing, those terms are not incorporated into the brief order of dismissal. Thus, the April 2 dismissal order, standing alone, does not meet either of *Kokkonen*'s requirements, and cannot support the district court's exercise of ancillary jurisdiction over the settlement agreement. Plaintiffs contend, however, that the so-ordered Settlement Agreement, signed April 29, 1985, either: (1) is itself a court order incorporating the terms of the Settlement Agreement; or (2) had the effect of modifying the April 2 dismissal order to include those terms, and that *Kokkonen* is satisfied in either case. We address these arguments in turn.

**A. Did the April 29 Post-Dismissal Order Itself Retain Jurisdiction?**

When a district court issues a final decision, it "disassociates itself from a case," *Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 42 (1995), and its jurisdiction over that case comes to an end, except for certain collateral matters especially reserved by precedent or by the Federal Rules, *see, e.g.*, *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 396 (1990) (Rule 11 sanctions); Fed. R. Civ. P. 54(d)(2)(B) (attorneys' fees); Fed. R. Civ. P. 60(b) (motions for relief from judgment). Indeed, the whole premise of *Kokkonen* is that a district court's power to issue new orders regarding a settlement agreement is terminated by the dismissal of the underlying case, unless special measures are taken. Two of our sister circuits

have accordingly held that a district court seeking to retain jurisdiction over a settlement agreement must take one of the steps prescribed by *Kokkonen before* a case is dismissed: a post-dismissal order, necessarily issued by a court that has already lost jurisdiction over the case, is ineffective. *See SmallBizPros, Inc. v. MacDonald*, 618 F.3d 458, 463 (5th Cir. 2010) ("[T]o ensure that jurisdiction is retained so a district court has the power to enforce the terms of a settlement agreement, . . . all of the requirements for retaining jurisdiction must be met at the time" of dismissal.); *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) ("[A] district court cannot retain jurisdiction by issuing a postdismissal order to that effect."). As the Fifth Circuit has said, "any action by the district court after the filing of . . . a stipulation [of dismissal] can have no force or effect because the matter has already been dismissed," and therefore amounts to mere "awareness and approval of the settlement terms," which is insufficient under *Kokkonen*. *SmallBizPros*, 618 F.3d at 463-64.

The difficulty with Plaintiffs' first argument, then, is clear: the April 29 Settlement Agreement came nearly a month *after* the April 2 dismissal order, and thus was signed by a court that had already relinquished its jurisdiction over the underlying case. Whatever legal force the so-ordering of the April 29 Settlement

Agreement might have had if filed prior to the district court's order of dismissal—a question on which we take no position—"[a]fter-the-fact statements and actions of the parties, and even of the district court, cannot create ancillary jurisdiction where such jurisdiction was not retained upon dismissal." *StreetEasy*, 752 F.3d at 306.

Plaintiffs seek to distinguish *SmallBizPros* and *Anago* on the ground that the underlying actions in those cases were dismissed by voluntary stipulation of the parties under Federal Rule of Civil Procedure 41(a)(1), while the original action in this case was dismissed by the court upon the consent of the parties under Rule 41(a)(2). This is a distinction without a difference. *Kokkonen* expressly contemplates that a court may take the same steps to retain jurisdiction over a settlement agreement whether a case is dismissed under Rule 41(a)(1) or Rule 41(a)(2). *Kokkonen*, 511 U.S. at 381-82. We therefore join the Fifth and Eleventh Circuits in holding that, once a case has been dismissed with prejudice, a district court's post-dismissal actions cannot confer upon the court ancillary jurisdiction to enforce a settlement agreement. Thus, because the district court in this case dismissed the underlying action on the merits on April 2, its subsequent so-

ordering of the settlement agreement did not establish jurisdiction over the enforcement of that agreement.

### B. Did the April 29 Post-Dismissal Order Modify the April 2 Order, so as to Retain Jurisdiction?

Plaintiffs' next argument—that the April 29 so-ordering of the Settlement Agreement constituted a "correction" of the April 2 dismissal order pursuant to Federal Rule of Civil Procedure 60(a), incorporating the settlement terms into the original dismissal order—likewise fails. Rule 60(a) permits a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order or other part of the record," either "on motion or on its own." Plaintiffs' argument appears to be that the April 2 dismissal order was always meant to "embody the settlement contract," *Kokkonen*, 511 U.S. at 381, and that the district court's so-ordering of the final agreement nearly a month later was an attempt to correct this deficiency. As Plaintiffs themselves concede, however, "on April 2, 1985 . . . the terms of the settlement . . . were still being finalized." Appellees' Br. at 7. It thus cannot have been a "mistake" for the district court's April 2 order of dismissal not to include them. Additionally, the so-ordered Settlement Agreement does not even mention the prior dismissal order that Plaintiffs contend it was intended to "correct," much less identify any

16

"oversight" in the dismissal order that required correction. Plaintiffs' attempt to cast the so-ordering of the Settlement Agreement as a "correction" of the dismissal order is thus unavailing.[3]

The district court and the parties may well have intended for the district court to continue to exercise jurisdiction over the Settlement Agreement, and to have the power to enforce its terms. Jurisdiction, however, "is a strict master and inexact compliance is no compliance." *SmallBizPros*, 618 F.3d at 464. Because the so-ordered Settlement Agreement was issued after the district court had dismissed the case, "the only order here was that the suit be dismissed, a disposition that is in no way flouted or imperiled by the alleged breach of the settlement agreement." *Kokkonen*, 511 U.S. at 380. Plaintiffs' claim that the United States breached the terms of the Settlement Agreement thus does not implicate the district court's need to "vindicate its authority" or "effectuate its decrees." *Id.*

[3] We express no view as to whether it would have been appropriate under Rule 60(a) for the district court to issue an amended judgment retaining jurisdiction over enforcement of the Settlement Agreement had the court actually done so. *Cf. F.A.C., Inc. v. Cooperativa de Seguros de Vida de P.R.*, 449 F.3d 185, 191 (1st Cir. 2006) (holding that the district court retained jurisdiction under an amended judgment issued pursuant to Rule 60 but the defendant had forfeited a potentially "plausible objection" that it was "a mistake to amend the judgment"). Likewise, we express no view as to whether the district court would have had authority under Rule 60(b) to vacate the judgment, as a court may act pursuant to Rule 60(b) only "[o]n motion" made "no more than a year after the entry of the . . . order," Fed. R. Civ. P. 60(c)(1), and Plaintiffs made no such motion here.

This being the case, the district court's conclusion that enforcement of the Settlement Agreement was within its ancillary jurisdiction was error.

**III.**

When a district court lacks ancillary jurisdiction over the enforcement of a settlement agreement, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Kokkonen*, 511 U.S. at 382. In this case, Plaintiffs have not identified such an "independent basis for federal jurisdiction," and there appears to be none in the district courts. "Controversies to which the United States shall be a Party" are, of course, within the Article III jurisdiction of the federal courts, U.S. Const. art. III § 2, cl. 1, but this is not the end of the inquiry: because the district courts have only that jurisdiction which Congress confers upon them by statute, *see Sheldon v. Sill*, 49 U.S. 441, 449 (1850), a case must be within both a court's Article III jurisdiction and its statutory jurisdiction, *see Kokkonen*, 511 U.S. at 377 ("Federal courts . . . possess only that power authorized by Constitution and statute."). In many circumstances, the district courts are statutorily granted jurisdiction over cases to which the United States is a party, *see, e.g.*, 28 U.S.C. § 1345 (jurisdiction where United States is plaintiff); 28 U.S.C. § 1346(b) (jurisdiction in tort suits where

18

United States is defendant). A contract claim against the United States, however, is an exception to that general rule: such claims do not fall within the statutory jurisdiction of the district courts if the claim is for an amount exceeding $10,000. *See* 28 U.S.C. § 1346(a). Here, Plaintiffs are seeking significantly more than $10,000 from the United States, on what is "essentially [a] state-law contract claim[]." *In re Am. Express*, 672 F.3d at 134. The district court thus had neither ancillary jurisdiction nor any "independent basis" for its jurisdiction, and we vacate the district court's orders granting Plaintiffs' motion to enforce the settlement agreement and denying the United States' motion for reconsideration.

Claims like Plaintiffs' claim under the Settlement Agreement do, however, fall within the ambit of the Tucker Act, which grants the Court of Federal Claims jurisdiction over "any claim against the United States founded . . . upon any express or implied contract with the United States." 28 U.S.C. § 1491(a)(1). Under 28 U.S.C. § 1631, if a claim is filed in a court that lacks jurisdiction over it, "the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed." "Normally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and

19

justice-defeating." *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotation marks omitted), *quoted in Ruiz v. Mukasey*, 552 F.3d 269, 276 (2d Cir. 2009). "Factors militating for a transfer include a finding that a new action filed by the litigant would be barred as untimely, and a finding that the original action was filed in good faith." *Liriano v. United States*, 95 F.3d 119, 122 (2d Cir. 1996) (citation omitted).

In this case, there is no evidence that Plaintiffs' choice to move for enforcement of the Settlement Agreement in the district court was the product of anything other than a good-faith mistake or error in interpreting the law. And, although there is no reason to believe that Plaintiffs' claim would be barred as untimely if filed in the Court of Federal Claims, a transfer would expedite the resolution of Plaintiffs' claim, "thereby furthering the interest of justice." *Ruiz*, 552 F.3d at 276 (transferring case even though claims would be timely if re-filed). Finally, the United States has indicated that it is amenable to such a transfer. "Given each of these factors, we conclude that the interest of justice is better served by transfer to" the Court of Federal Claims "than by dismissal." *Id.* We therefore remand this case to the district court and respectfully direct that court to transfer the case to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.

**CONCLUSION**

For the foregoing reasons, we VACATE the order of the district court enforcing the parties' settlement agreement and REMAND this matter for transfer to the Court of Federal Claims pursuant to 28 U.S.C. § 1631.