**Wilfredo POLANCO, Plaintiff,**

v.

**Norm DWORZACK, R.N., D. O'Connell, Dr., B. Frisby, Nurse Admin., Debra Herman, R.N., W.R. Kelly, Supt., Defendants.**

**No. 94–CV–6146 CJS.**

United States District Court,
W.D. New York.

Sept. 30, 1998.

Wilfredo Polanco, Great Meadow Correctional Facility, Comstock, NY, pro se.

Carlos Rodriguez, Asst. Atty. Gen., Rochester, NY, for Defendants.

### DECISION AND ORDER

SIRAGUSA, District Judge.

Before the Court is the defendants' motion [# 17] for summary judgment. For the reasons that follow, the motion is granted.

### BACKGROUND

In this action pursuant to 42 U.S.C. § 1983, the plaintiff, who was formerly an

inmate at Attica Correctional Facility, alleges that while he was at Attica, the defendants violated his rights under the Eighth Amendment to the United States Constitution by their deliberate indifference to his medical needs. The plaintiff, who is HIV positive, alleges that between January 13, 1994 and February 28, 1994, the defendants refused to provide him with a high-calorie, high-protein, dietary supplement, and that as a result, he lost weight and experienced a drop in his "T-cell count." Specifically, the plaintiff requested a supplement known as "Ensure Li-Quin." Apparently, the plaintiff had been receiving this supplement while he was housed at Clinton Correctional Facility, however he stopped receiving the supplement when he was transferred to Attica and placed in the Segregated Housing Unit (SHU).[1]

The plaintiff conducted no discovery. The defendants filed the subject motion for summary judgment on November 26, 1997. The defendants' summary judgment motion alleges, inter alia, that the complaint fails to state a constitutional violation, that the complaint fails to allege any grounds for supervisory liability as to the defendants Frisby and Kelly, and that the defendants are entitled to qualified immunity because they acted reasonably and in good faith in treating the plaintiff. On December 5, 1997, the plaintiff requested a sixty-day extension of time to respond to the motion. On December 17, 1997, the plaintiff was granted an extension until March 2, 1998, to submit his responsive papers. The plaintiff has never filed a response to the motion.

In support of the summary judgment motion, each of the defendants has submitted an affidavit. In addition, the defendants' counsel has submitted his own affirmation, a statement of facts, and a memorandum of law. The defendants' affidavits establish that the plaintiff was transferred to Attica from Clinton on January 13, 1994, and that upon his arrival at Attica, the plaintiff was given "an extensive medical examination." A review of the plaintiff's medical records revealed that the plaintiff had been diagnosed as having "HIV+ (AIDS)," and that "he was refusing to take prescribed protocol medications for his HIV+ (AIDS)." The plaintiff was "offered standard HIV+ (AIDS) treatment, according to his disease status," but he "refused to accept the standard HIV+ (AIDS) treatment and instead, he advised Attica medical personnel that the only treatment that he would accept for his ... diagnosis was Multiple Vitamins and Vitamin C." On at least two occasions, the plaintiff refused to be seen by medical personnel and also refused to be weighed. On many sick call visits, the plaintiff requested that the nurses prescribe him medication, which they were not permitted to do. During his brief stay at Attica, at his request, the plaintiff was seen on sick call rounds at least twenty-five times. His complaints were directed primarily at the diet that he was being given, although he also complained of athlete's foot, headaches and back aches. The medical records state that the plaintiff was frequently argumentative and at times hostile and verbally abusive towards the Attica medical staff. Although the plaintiff repeatedly asked to be given Ensure, defendant David W. O'Connell, M.D., states that the "plaintiff's weight was stable, eliminating the need for such nutritional supplements." Instead, Dr. O'Connell states that "[u]sually dietary supplements are given to HIV+ (AIDS) inmates at Attica, in the form of an evening snack." On January 18, 1994, the plaintiff was "placed on snack diet list and Mess Hall additional food list," which was "a clinical-medical substitute for Ensure." The plaintiff's snack sometimes consisted of a bologna sandwich. The plaintiff frequently complained that he did not want a bologna sandwich, and that he insisted upon receiving Ensure. Defendant Debra Herman states that on one occasion, the plaintiff threw a sandwich bag containing a bologna sandwich at her. Despite the plaintiff's contention that he was losing weight, the plaintiff's weight increased from 147 pounds to 154 pounds while he was at Attica. The plaintiff filed approximately twenty grievances during his stay at Attica, complaining that he was not

---

1. While at Clinton, the plaintiff had been serving a disciplinary penalty in the SHU. Upon his arrival at Attica, he was immediately assigned to the Attica SHU to serve the remaining period of his penalty.

receiving Ensure and also complaining in general regarding the treatment that he was receiving for his HIV+ condition. However, the plaintiff repeatedly refused to authorize the release of his confidential medical records, which hampered the investigation of his grievances. By letter dated January 20, 1994, the plaintiff wrote to Walter R. Kelly, the Superintendent of Attica, regarding his complaints about his medical treatment. The superintendent's office checked with defendant O'Connell, who informed Mr. Kelly that the plaintiff was being treated according to the facility's medical protocol. On March 21, 1994, Robert B. Greifinger, M.D., the Deputy Commissioner and Chief Medical Officer of the New York State Department of Correctional Services, wrote a letter to the plaintiff which stated in relevant part:

> The Division of Health Services has investigated with the health care staff at Attica Correctional Facility. You have prescriptions for multiple medications for your primary diagnosis, but have refused to take any such medication other than prescribed vitamins. You have an evening snack. Ensure is not medically indicated at this time.

The plaintiff left Attica on April 13, 1994, when he was transferred to another facility.

## ANALYSIS

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See, Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). "[T]he movant must make a prima facie showing that the standard for obtaining summary judgment has been satisfied." 11 Moore's Federal Practice, § 56.11[1][a] (Matthew Bender 3d ed.). In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy this burden by pointing to an absence of evidence to support an essential element of the non-moving party's claim. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once that burden has been established, the burden then shifts to the non-moving party to demonstrate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To carry this burden, the non-moving party must present evidence sufficient to support a jury verdict in its favor. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. Summary judgment is appropriate only where, "after drawing all reasonable inferences in favor of the party against whom summary judgment is sought, no reasonable trier of fact could find in favor of the non-moving party." *Leon v. Murphy,* 988 F.2d 303, 308 (2d Cir.1993).

The standard for establishing an Eighth Amendment medical indifference claim is also well established. In *Ross v. Kelly,* 784 F.Supp. 35, 43 (W.D.N.Y.1992), *aff'd,* 970 F.2d 896 (2d Cir.1992), *cert. denied,* 506 U.S. 1040, 113 S.Ct. 828, 121 L.Ed.2d 698 (1992), the court held:

> The Eighth Amendment, by its terms, prohibits the infliction of "cruel and inhuman punishment." To establish an Eighth Amendment violation based on the alleged inadequacy of prison medical treatment or the withholding of essential health care, plaintiff must prove that the defendants' actions or omissions amounted to "deliberate indifference to a serious medical need." Recently, the Supreme Court held that the deliberate indifference standard includes both an objective and a subjective component. As to the former—the objective component, a court must ask whether there has been a sufficiently serious deprivation of the prisoner's constitutional rights. With respect to the latter, a court must consider whether the deprivation was brought about by the defendants in wanton disregard of those rights. To establish deliberate indifference, therefore, plaintiff must prove that the defendants had a culpable state of mind and intended wantonly to inflict pain.

(Citations omitted). The court went on to state that:

> A [prisoner's] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. Rather, the plaintiff must allege conduct that is "repugnant to the conscience of mankind" or "incompatible with the evolving standards of decency that mark the progress of a maturing society." *Id.* 784 F.Supp. at 44 (Citations omitted).

Moreover, it is well settled that a prisoner does not have the right to the treatment of his choice. *Id.* 784 F.Supp. at 44–45. Therefore, mere disagreement with a prison doctor's professional judgment does not constitute a constitutional violation. *Id.* 784 F.Supp. at 44.

■ On the issue of whether or not the plaintiff has suffered a violation of his Eighth Amendment rights, the defendants have carried their burden under Rule 56(c), because they have made the requisite prima facie showing of an absence of any material issue of fact and their entitlement to judgment as a matter of law. The defendants have demonstrated that they properly treated the plaintiff in accordance with Attica's medical protocols. The medical records demonstrate that the defendants met with the plaintiff whenever he requested a sick call, and that they properly treated the plaintiff. The medical records also establish that although the plaintiff was maintaining a steady weight while at Attica, in response to the plaintiff's requests the defendants did allow the plaintiff to receive a snack. The defendants have demonstrated that the plaintiff's complaint is only that he was not given a specific, name-brand dietary supplement. The plaintiff was given a daily supplementary snack, however he was dissatisfied because he did not receive Ensure. Thus, the plaintiff's claim arises entirely from his disagreement with his doctor's medical judgment.

The plaintiff has submitted nothing in response to this motion, therefore he has failed to carry his burden pursuant to Rule 56(e) by demonstrating the existence of a material issue of fact. The Court has reviewed the record in the light most favorable to the plaintiff and has drawn all permissible inferences in his favor, and concludes that no reasonable trier of fact could find in the plaintiff's favor at trial. Summary judgment must therefore be granted to the defendants. The Court need not reach the alternative grounds for summary judgment raised by the defendants.

### CONCLUSION

Accordingly, the defendants' motion for summary judgment [# 17] is granted in all respects, and the complaint is dismissed, with prejudice.

So ordered.