ELIZABETH A. WOLFORD, United States District Judge
INTRODUCTION
Plaintiff Henry Benitez ("Plaintiff"), proceeding pro se , commenced this action against a number of named and unnamed prison officials (collectively, "Defendants") pursuant to 42 U.S.C. § 1983. (Dkt. 1). Plaintiff alleges that Defendants violated his constitutional rights under the First and Eighth Amendments of the Constitution, as more specifically stated in the Complaint.
Currently pending before the Court is Plaintiff's motion for a preliminary injunction (Dkt. 4),[1] and Defendants' motion for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure (Dkt. 16). For the following reasons, both motions are denied.
BACKGROUND [2]
Plaintiff is an inmate in the custody of the New York State Department of Corrections and Community Supervision, and is presently housed at the Auburn Correctional Facility in Auburn, New York. (See Dkt. 24 (Notice of Change of Address)). Plaintiff claims that he suffers from various mental and physical ailments, including "liver cancer, liver cirrhosis, a low platelet count, asthma, claustrophobia, and auditory hallucinations." (Dkt. 1 at ¶ 31). Plaintiff also alleges that his mental condition has caused him to attempt to commit *534 suicide, "repeatedly set fires in a number of [special housing unit] cells[,] ... repeatedly thr[o]w urine and fecal matter at certain guards," and self-mutilate himself by cutting "his wrists, his penis, and his scrotum." (Id. at ¶ 35).
Plaintiff sets forth numerous assertions describing allegedly inadequate and unhealthy prison cell conditions, various physical assaults inflicted upon him, the deprivation of food provisions and other prison services, and that certain of the named and unnamed prison officials have deliberately ignored his acts of self-harm and claims of mental instability. (See, e.g., id. at ¶¶ 44-46, 49-60, 64, 79, 82-86, 93, 102). Many of these allegations are not relevant to the disposition of the pending motions. However, Plaintiff alleges that on October 6, 2016, Plaintiff's "outside oncologist recommended that [he] be housed in the facility's infirmary for close monitoring while he [was] taking prescribed chemotherapy medication." (Id. at ¶ 71). Plaintiff claims that Dr. Kenneth Ott ("Dr. Ott"), a physician employed at Elmira Correctional Facility, chose not to follow this recommendation because Plaintiff had filed grievances against the prison medical staff. (Id. at ¶ 72). Plaintiff also alleges that between November and December of 2016, Candice Baker ("Baker"), a nurse employed at Elmira Correctional Facility, failed to respond to Plaintiff's "sick call slips," and that she "refused to provide him with prescribed medication for his liver diseases." (Id. at ¶ 97). Plaintiff further alleges that Baker was in "an intimate relationship" with Dr. Ott, and that she convinced him "to refuse to comply with a number of medical recommendations made by [Plaintiff]'s outside treating specialists." (Id. at 198).
PROCEDURAL HISTORY
On May 22, 2017,[3] Plaintiff filed a motion for a preliminary injunction. (Dkt. 4). In his declaration in support of this motion, Plaintiff argues that Dr. Ott and Baker "deliberately refused ... to provide [him] with medical treatment recommended by outside specialists for [his] liver diseases." (Id. at ¶ 3). Specifically, Plaintiff affirms that "from November 2016 to the date of the filing" of his motion, Baker "deliberately refused to respond to [his] sick-call slips and to provide [him] with prescribed medication for [his] liver diseases." (Id. at ¶ 4). Plaintiff further affirms that Dr. Ott refused to provide "an examination of [Plaintiff's] esophagus," perform a "sonogram examination of [Plaintiff's] testicals [sic] for evidence of cancer," place Plaintiff "in the prison's infirmary during chemotherapy treatment," and provide Plaintiff with an "Ensure" nutritional drink "to combat [his] lack of appetite for solid foods." (Id. ). Plaintiff claims that as a result of Baker's and Dr. Ott's continued indifference to his outside physicians' recommendations, Plaintiff is "suffering from internal bleeding from [his] esophagus; great pain in [his] swollen testicals [sic]; lack of appetite for solid foods; and a loss of body weight." (Id. at ¶ 5). Plaintiff requests that the Court issue a preliminary injunction "requiring ... [D]efendants to carry out the treatment plan recommended by [his] outside specialists." (Id. at ¶ 6).
On June 1, 2017, Plaintiff was granted in forma pauperis status. (Dkt. 5). On August 4, 2017, Defendants filed a motion *535 for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Dkt. 16). Defendants argue that each assertion in Plaintiff's motion for a preliminary injunction is "false or materially misleading." (Dkt. 16-3 at 1). Specifically, Defendants claim that Plaintiff received an examination of his esophagus two weeks before he filed his motion, Plaintiff was scheduled to receive a sonogram of his scrotum on two separate occasions, but he refused to submit to those procedures, and that, according to prison medical staff, Plaintiff does not require dietary supplements or housing in the prison infirmary. (Id. at 2-3). Defendants argue that, "[a]t a minimum," the instant matter should be dismissed. (Id. at 3). However, Defendants further contend that the "most appropriate sanction" would be to impose a filing injunction, prohibiting Plaintiff "from filing any additional actions, of any type, in this Court without first obtaining the prior approval of the Court." (Id. ). Defendants also request that the Court grant them an award of attorney's fees in the amount of $1,050.00 pursuant to Rule 11(c)(4). (Id. ).[4] Plaintiff opposes Defendants' motion. (Dkt. 21). Since the disposition of Plaintiff's motion for a preliminary injunction may influence the outcome of Defendants' motion for sanctions, the Court turns first to Plaintiff's motion.
DISCUSSION
I. Plaintiff's Motion for a Preliminary Injunction
A. Legal Standard
In order to obtain a preliminary injunction, the moving party must establish the following: (1) a likelihood of irreparable harm absent preliminary relief; (2) a likelihood of success on the merits; (3) the balance of equities tipping in favor of the moving party; and (4) the public interest is served by an injunction. See Winter v. Nat. Res. Def. Council, Inc. , 555 U.S. 7, 20, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). "Normally, the purpose of a preliminary injunction is to maintain the status quo ante pending a full hearing on the merits. Occasionally, however, the grant of injunctive relief will change the positions of the parties as it existed prior to the grant." Abdul Wali v. Coughlin , 754 F.2d 1015, 1025 (2d Cir. 1985) (internal citations omitted), overruled on other grounds by O'Lone v. Estate of Shabazz , 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). "A higher standard applies ... if the requested injunction is 'mandatory,' altering rather than maintaining the status quo, or if the injunction will provide the movant with substantially all the relief sought and that relief cannot be undone even if defendant prevails at a trial on the merits." People for Ethical Treatment of Animals v. Giuliani , 105 F.Supp.2d 294, 303 (S.D.N.Y. 2000), adopted , No. 00 Civ. 3972 (VM), 2000 WL 1639423 (S.D.N.Y. Oct. 31, 2000), aff'd , 18 Fed.Appx. 35 (2d Cir. 2001). The Second Circuit has "held that a mandatory injunction should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief." Tom Doherty Assocs. v. Saban Entm't, Inc. , 60 F.3d 27, 34 (2d Cir. 1995) (internal quotation marks and citation omitted).
*536 Plaintiff concedes that he seeks a mandatory injunction from this Court that requires Defendants to "carry out the treatment plan recom[m]ended by his outside doctors." (Dkt. 4 at 7). As such, Plaintiff must demonstrate "a clear or substantial likelihood of success on the merits of his claims." Jolly v. Coughlin , 76 F.3d 468, 473 (2d Cir. 1996). The Court finds that Plaintiff has failed to carry this burden.
B. Plaintiff Has Not Demonstrated a Clear or Substantial Likelihood of Success on the Merits
In his initial motion papers, Plaintiff submitted no evidence to establish a clear or substantial likelihood of success on the merits beyond his own assertions. Plaintiff relies upon Estelle v. Gamble , 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) and Johnson v. Wright , 412 F.3d 398 (2d Cir. 2005) in arguing that he has made a sufficient showing of entitlement to relief. (See Dkt. 4 at 8). However, Plaintiff's reliance is misplaced.
In Estelle , the Supreme Court determined whether the plaintiff's complaint stated a § 1983 claim "[a]gainst th[e] backdrop" of its then-existing cruel and unusual punishment jurisprudence. See 429 U.S. at 102-06, 97 S.Ct. 285. In contrast to what is required to survive dismissal for the failure to state a claim, Plaintiff must do more than merely set forth "enough facts to state a claim to relief that is plausible on its face" to establish a clear or substantial likelihood of success on the merits. Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; see Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc. , No. 17-CV-0957 (ADS)(AKT), 2017 WL 6459464, at *8 (E.D.N.Y. Dec. 15, 2017) (noting that the standard required to prevail on a motion for a preliminary injunction "is higher than one to overcome a motion to dismiss"); Lomax v. Aegis Funding Corp. , No. 09-CV-2321 (ARR) (LB), 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (stating that in the context of a motion to dismiss, "[p]lausibility ... does not refer to the likelihood of success on the merits of the legal claim"). The standard for demonstrating a "likelihood of success on the merits," let alone a "clear or substantial" showing of such entitlement, is far more demanding than the plausibility standard applied to survive dismissal for the failure to state a claim at the pleading stage.
The Second Circuit's decision in Johnson is also distinguishable. In Johnson , the defendants bore the burden on their motion for summary judgment of demonstrating that there was no genuine issue of material fact and that judgment should be entered in their favor as a matter of law. See 412 F.3d at 403-04 ; see also D'Amico v. City of New York , 132 F.3d 145, 149 (2d Cir. 1998) (stating the summary judgment standard). Accordingly, the fact that the plaintiff in Johnson defeated the defendants' motion by raising a genuine issue of material fact as to whether the defendants ignored the recommendations of the plaintiff's treating physicians is not akin to establishing a clear or substantial likelihood of success on the merits of an action. Furthermore, while the Second Circuit has stated that "[p]rison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctors," Gill v. Mooney , 824 F.2d 192, 196 (2d Cir. 1987), a review of Defendants' submissions reveals that this is not the case here.
In opposition to Plaintiff's motion for a preliminary injunction, Defendants have moved for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. (Dkt. 16). Based upon the various assertions made by Plaintiff in his motion papers, Defendants request that the Court *537 dismiss this action and bar Plaintiff from commencing any subsequent actions in this Court without the Court's approval. (Dkt. 16-3 at 3). In support of their motion, Defendants submit the declaration of Lauren Davis ("Davis"), a registered nurse employed at the Elmira Correctional Facility. (Dkt. 16-1). Davis affirms that Plaintiff "received an endoscopy of his esophagus on May 10, 2017." (Id. at ¶ 3). Davis also submits medical records indicating that this procedure was performed. (Id. at 6, 9-11). Furthermore, Plaintiff does not dispute this fact. Instead, Plaintiff responds that the procedure was conducted several months after his outside physicians first made the recommendation. (Dkt. 21 at ¶ 4). However, outside his own self-serving allegations, Plaintiff provides no proof that Baker or Dr. Ott "deliberately ignored these recommendations." (See id. ).
Davis also affirms that Plaintiff was scheduled to receive a sonogram of his scrotum on November 1, 2016, and then again, on December 8, 2016, but that he "refused the test on both occasions." (Dkt. 16-1 at ¶ 5). Davis submits medical records indicating that Plaintiff was approved for an ultrasound and/or a sonogram of his scrotum on both dates (id. at 19-20), but that he refused to undergo those procedures (id. at 17). Plaintiff does not submit any additional evidence to controvert Defendants' position, and merely states that he has "not been afforded an opportunity to undergo the sonogram in question." (Dkt. 21 at ¶ 5). This unsupported and misleading allegation does not establish a clear or substantial likelihood of success on the merits.
Plaintiff further claims that his outside physicians recommended that he "be housed in the prison's infirmary during chemotherapy treatment," and that Dr. Ott has "deliberately refused" to follow-through with this recommendation. (Dkt. 4 at ¶ 4). In his response papers, Plaintiff submits a medical record in which he informed his outside physicians that he "feels he is falling [and] is dizzy." (Dkt. 21 at 14). After an evaluation, the consulting physician stated that Plaintiff "should be monitored, if it is believed that what he is saying is accurate. [Plaintiff] requests monitoring/supervision given his dizziness/falling episodes." (Id. ).
Davis affirms that
[t]here is no medical need for Plaintiff to be housed in the infirmary while he is undergoing chemotherapy. Inmates who require chemotherapy are not housed in the infirmary unless there is a medical need, and neither Plaintiff nor the significant majority of other inmates who are currently undergoing chemotherapy are so housed.
(Dkt. 16-1 at ¶ 10). Davis also avers that no treating physician has recommended that Plaintiff be housed in the infirmary during his chemotherapy. (Id. at ¶ 11). Plaintiffs submissions indicate only that an outside physician recommended some form of additional monitoring, and only "if it is believed that what [Plaintiff] is saying is accurate." (Dkt. 21 at 14). Plaintiff does not submit evidence of any physician specifically recommending that he should be placed in the prison's infirmary while he undergoes chemotherapy.
Furthermore, even if Plaintiff's submissions could be construed in such a way, "[p]rison medical staff [are] given wide discretion in determining how to treat inmates. In this context, '[t]he decisions of physicians regarding the care and safety of patients are entitled to a presumption of correctness.' " Williams v. Smith , No. 02 Civ. 4558 (DLC), 2009 WL 2431948, at *9 (S.D.N.Y. Aug. 10, 2009) (quoting Kulak v. City of New York , 88 F.3d 63 (2d Cir. 1996) ). "[A] showing of nothing more than a difference of medical opinion as to the need to pursue one *538 course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference." Echevarria v. Canfield , No. 12CV129A, 2014 WL 174109, at *4 (W.D.N.Y. Jan. 13, 2014), report and recommendation adopted , No. 12-CV-129, 2014 WL 993831 (W.D.N.Y. Mar. 13, 2014). "Moreover, a prison doctor who relies on his medical judgment to modify or disagree with an outside specialist's recommendation of how to treat an inmate is not said to act with deliberate indifference." Williams , 2009 WL 2431948, at *9 ; see Gillespie v. N.Y. State Dep't of Corr. Servs. , No. 9:08-CV-1339 (TJM/ATB), 2010 WL 1006634, at *6 (N.D.N.Y. Feb. 22, 2010) ("Disagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment."), report and recommendation adopted , No. 9:08-CV-1339, 2010 WL 1006643 (N.D.N.Y. Mar. 19, 2010) ; Wright v. N.Y. State Dep't of Corr. Servs. , No. 06 Civ. 03400 (RJS)(THK), 2008 WL 5055660, at *15 (S.D.N.Y. Oct. 10, 2008) ("Nor can deliberate indifference be established simply because an inmate 'might prefer a different treatment,' or feels that he did not get the level of medical attention he desired." (quoting Chance v. Armstrong , 143 F.3d 698, 703 (2d Cir. 1998) ), report and recommendation adopted , No. 06 Civ. 3400 (RJS) (THK), 2008 WL 5084193 (S.D.N.Y. Nov. 24, 2008), aff'd , 372 Fed.Appx. 175 (2d Cir. 2010).
In sum, Plaintiff fails to demonstrate that any physician recommended that he be housed in the infirmary during his chemotherapy treatment, or that any deviation from his outside physician's "qualified" recommendation for additional monitoring amounted to anything more than a difference in medical judgment-or, at worst, mere negligence. See generally Smith v. Carpenter , 316 F.3d 178, 184 (2d Cir. 2003) (noting that "mere negligence in diagnosis or treatment is insufficient to state a valid Eighth Amendment claim," and that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner" (quoting Estelle , 429 U.S. at 105-06, 97 S.Ct. 285 )). Accordingly, Plaintiff failed to establish a clear or substantial likelihood of success regarding this assertion as well.
Finally, Plaintiff contends that he was entitled to receive provisions of " 'Ensure,' a nutritional drink, to combat [his] lack of appetite for solid foods." (Dkt. 4 at ¶ 4). Davis affirms that while "Plaintiff's weight is under observation[,] ... at this time his weight does not warrant prescribing a nutritional supplement such as Ensure." (Dkt. 16-1 at ¶ 9). In his responsive papers, Plaintiff claims that on August 20, 2015, August 27, 2015, and September 29, 2016, his outside physicians recommended that he be provided with "Boost," another variety of dietary supplement. (See Dkt. 21 at ¶ 6). A review of three medical records submitted by Plaintiff confirms that his outside physicians recommended that he receive "Boost" on each of those occasions. (Id. at 10-12).
However, Plaintiff's submissions merely establish that he disagrees with the treatment imposed by the prison medical staff. Davis affirms that Plaintiff's weight is being monitored and that a dietary supplement is not needed at the present time. (Dkt. 16-1 at ¶ 9). Plaintiff does not submit evidence that would suggest that this conclusion is unreasonable. "Not every physician will treat every ailment in exactly the same manner. That does not mean that one of the physicians must be acting with deliberate indifference to the patient's needs." Douglas v. Stanwick , 93 F.Supp.2d 320, 325 (W.D.N.Y. 2000). Here, the Court finds that Plaintiff has failed to submit any evidence that Dr. Ott's and Baker's decision to refrain from providing Plaintiff *539 with a dietary supplement was the result of deliberate indifference to his medical needs, and not simply a difference in medical judgment. See Polanco v. Dworzack , 25 F.Supp.2d 148, 151 (W.D.N.Y. 1998) (noting that the plaintiff's dissatisfaction that his "daily supplementary snack" was not an Ensure beverage merely indicates "his disagreement with his doctor's medical judgment"); see also Rush v. Canfield , No. 13-CV-00191(S)(M), 2015 WL 12991158, at *6 (W.D.N.Y. Jan. 6, 2015) ("There is simply nothing in the record to suggest that [the] defendants' conduct in treating [the] plaintiff's back pain was based on anything other than medical judgment."), aff'd , 649 Fed.Appx. 70 (2d Cir. 2016).
Therefore, the Court concludes that Plaintiff has failed to demonstrate "a clear or substantial likelihood of success on the merits of his claims." Jolly , 76 F.3d at 473. Having made this determination, the Court need not address the other necessary elements for the issuance of a preliminary injunction. See Two Locks, Inc. v. Kellogg Sales Co. , 68 F.Supp.3d 317, 333 (E.D.N.Y. 2014) ("The Court finds that the [p]laintiff has failed to establish a likelihood of success, or a substantial question, as to the merits of its contractual claims. Therefore, the Court need not reach the [p]laintiff's arguments with respect to the balance of equities or irreparable harm." (citing cases)). Accordingly, Plaintiff's motion for a preliminary injunction is denied.
II. Defendants' Motion for Sanctions
A. Legal Standard
" Rule 11 governs motions for frivolous filings." Robledo v. Bond No. 9 , 965 F.Supp.2d 470, 477 (S.D.N.Y. 2013). A party or counsel for a party is required by the Federal Rules of Civil Procedure to certify that, to the best of their knowledge, the factual contentions made have evidentiary support. Fed. R. Civ. P. 11(b)(3). Rule 11 allows a court to "impose an appropriate sanction on any attorney, law firm, or party that violated [ Rule 11(b) ] or is responsible for the violation." Fed. R. Civ. P. 11(c)(1). "Sanctions may be-but need not be-imposed when court filings are used for an 'improper purpose,' or when claims are not supported by existing law, lack evidentiary support, or are otherwise frivolous." Ipcon Collections LLC v. Costco Wholesale Corp. , 698 F.3d 58, 63 (2d Cir. 2012) (citation omitted). "When deciding whether to grant Rule 11 sanctions, the Court applies an objective standard of reasonableness, and looks to, among other factors, whether the party acted in bad faith; whether they relied on a direct falsehood; and whether the claim was utterly lacking in support." Grayson v. Ressler & Ressler , 271 F.Supp.3d 501, 526 (S.D.N.Y. 2017) (quotation marks and citation omitted); see StreetEasy, Inc. v. Chertok , 752 F.3d 298, 307 (2d Cir. 2014) ("With respect to factual contentions, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.' " (quoting Storey v. Cello Holdings, L.L.C. , 347 F.3d 370, 388 (2d Cir. 2003) )).
"It is well established that Rule 11 applies to pro se litigants." Smith v. Educ. People, Inc. , 233 F.R.D. 137, 142 n.9 (S.D.N.Y. 2005) (citing cases), aff'd , No. 05-2971-CV, 2008 WL 749564 (2d Cir. Mar. 20, 2008). "However, where a pro se litigant is alleged to have run afoul of Rule 11, courts generally apply a more lenient standard than would be applicable where a party is represented by learned counsel." Sachs v. Matano , No. CV 15-6049 (JFB) (AKT), 2016 WL 4179792, at *7 (E.D.N.Y. July 15, 2016), report and recommendation adopted , No. 15-CV-6049 (JFB) (AKT), 2016 WL 4186708 (E.D.N.Y. Aug. 4, 2016) ; see Maduakolam v. Columbia Univ. , 866 F.2d 53, 56 (2d Cir. 1989) ("While it is true that Rule 11 applies both to represented and pro se litigants, the *540 court may consider the special circumstances of litigants who are untutored in the law."). Even still, this leniency towards pro se litigants is not static. " Rule 11 's application [is] determined on a sliding scale according to the litigant's level of sophistication." Horton v.Trans World Airlines Corp. , 169 F.R.D. 11, 16 (E.D.N.Y. 1996). Accordingly, while all pro se litigants deserve some degree of leniency, "where a litigant has some experience with the legal system, courts may treat him less leniently than 'wholly inexperienced pro se litigants.' " Sachs , 2016 WL 4179792, at *7 (quoting Muniz v. Goord , No. 9:04-CV-0479, 2007 WL 2027912, at *6 n.30 (N.D.N.Y. July 11, 2007) ("My review of the applicable law suggests that courts need not treat special status as an 'all or nothing' benefit but may confer special status to a semi-experienced pro se litigant on a 'sliding scale,' treating the litigant more leniently than represented litigants but not as leniently as wholly inexperienced pro se litigants.")).
Notably, "even when a district court finds a violation of Rule 11, [t]he decision whether to impose a sanction for a Rule 11(b) violation is ... committed to the district court's discretion." Ipcon Collections LLC , 698 F.3d at 63 (quotation marks and citation omitted). That broad discretion also extends to "tailoring appropriate and reasonable sanctions." S.E.C. v. Smith , 710 F.3d 87, 98 (2d Cir. 2013) (quotation marks and citation omitted).
B. Certain of Plaintiff's Factual Assertions Are "Utterly Lacking in Support"
Here, the Court finds Plaintiff's contention that "from November 2016 to the date of the filing" of his motion, he never received "an examination of [his] esophagus" (Dkt. 4 at ¶ 4), as "utterly lacking in support," see StreetEasy, Inc. , 752 F.3d at 307 (quotation marks and citation omitted). Defendants' submissions demonstrate that Plaintiff underwent an endoscopy of his esophagus on May 10, 2017 (Dkt. 16-1 at 1, 6-11)-which is twelve days before his motion was post-marked-and Plaintiff does not contest that this procedure did, in fact, occur (see Dkt. 21). Plaintiff's tacit admission evidences the falsity of this particular allegation at the time his motion was filed. As such, the Court finds Plaintiff's allegation that prison medical staff deliberately refused to provide him with an examination of his esophagus to be wholly unsupported by the record evidence.
In addition, although Plaintiff contends that he was never given an opportunity to receive a sonogram of his scrotum (see Dkt. 4 at ¶ 4), the record demonstrates that he was approved for a sonogram and/or an ultrasound procedure for his scrotum in both November and December of 2016 (Dkt. 16-1 at 19-20), but he refused to follow through with the procedure on both occasions (id. at 17). Plaintiff does not submit any evidence to rebut Defendants' submissions, and merely states that he has "not been afforded an opportunity to undergo the sonogram in question." (Dkt. 21 at ¶ 5). This assertion is both unsupported by the record evidence and is misleading, as it appears that Plaintiff has not received this treatment due to his own refusal to attend the necessary appointments for undergoing these procedures. Accordingly, the Court finds Plaintiff's allegation that the prison medical staff deliberately refused to provide him with a sonogram procedure to be "utterly lacking in support" as well. See StreetEasy, Inc. , 752 F.3d at 307 (quotation marks and citation omitted).
However, the Court does not find Plaintiff's assertions regarding the prison medical staff's failure to house him in the prison infirmary during chemotherapy quite so *541 egregious. As Plaintiff discusses, his outside physician recommended additional monitoring and supervision-granted, with the qualification that the recommendation should only be considered if Plaintiff's assertions of dizziness were believed. (Dkt. 21 at 14). In "resolving all doubts in favor of the part[y] facing sanctions," Ho Myung Moolsan Co. v. Manitou Mineral Water, Inc. , 665 F.Supp.2d 239, 263 (S.D.N.Y. 2009) (quotation marks and citation omitted), although Plaintiff's "arguments were undoubtedly weak," it cannot be said that his "claims were so devoid of factual support that sanctions [are] appropriate," Vanacore v. Vanco Sales LLC , No. 16-CV-1969 (CS), 2017 WL 2790549, at *7 (S.D.N.Y. June 27, 2017) (quoting Bilharz v. First Interstate Bank of Wis. , 98 F.3d 985, 989 (7th Cir. 1996) ).
This rationale applies equally to Plaintiff's assertions regarding the prison medical staff's failure to provide him with certain nutritional beverages. Plaintiff's submissions indicate that his outside physicians recommended that he receive "Boost" (Dkt. 21 at 10-12), and Defendants do not dispute that Plaintiff did not receive this dietary supplement. While Plaintiff failed to demonstrate a clear or substantial likelihood of success on the merits of this claim, and it appears he is only pointing to a disagreement in medical judgment, the fact that a party's claims may be meritless does not necessarily warrant the imposition of Rule 11 sanctions. See Daniel v. Safir , 135 F.Supp.2d 367, 379 (E.D.N.Y. 2001) ("[The p]laintiff's claims against [the] defendants are plainly without merit. Nevertheless, this alone does not warrant sanctions, particularly as [the] plaintiff is proceeding pro se. "). The Court does not find that this assertion "was clearly violative of Rule 11, especially given Plaintiff's pro se status," Sachs , 2016 WL 4179792, at *9, and thus, the Court also does not find that it deserves the imposition of sanctions.
Therefore, the Court concludes that while Plaintiff's allegations relating to his chemotherapy treatment and the provision of a dietary supplement do not violate Rule 11, his allegations regarding the prison medical staff's purported failure to afford him the opportunity to undergo certain medical procedures are "utterly lacking in support." See StreetEasy, Inc. , 752 F.3d at 307 (quotation marks and citation omitted). "Having determined that [Plaintiff] violated Rule 11(b)(3), the Court must now determine whether to impose sanctions." Johnson v. Levy , No. 10-CV-3217 (ADS) (ETB), 2012 WL 3580236, at *12 (E.D.N.Y. Aug. 17, 2012) (emphasis added).
C. The Court Exercises its Discretion in Declining to Impose Sanctions at This Time
"Ultimately, the decision to impose Rule 11 sanctions rests in the sound discretion of the court, and 'should be imposed with caution.' " Murawski v. Pataki , 514 F.Supp.2d 577, 590 (S.D.N.Y. 2007) (citation omitted) (quoting Knipe v. Skinner , 19 F.3d 72, 78 (2d Cir. 1994) ); see Perez v. Posse Comitatus , 373 F.3d 321, 325 (2d Cir. 2004) ("Even if the district court concludes that the assertion [of a motion] violates Rule 11, however, the decision whether or not to impose sanctions is a matter for the court's discretion."). "To say that the court has discretion, however, is merely to say that the court has a choice, not that it may exercise the choice without resort to reason; discretion, in other words, is not whim." Milani v. Int'l Bus. Machs. Corp. , No. 02 Civ. 3346(MBM), 2004 WL 3068451, at *2 (S.D.N.Y. Dec. 30, 2004).
At the outset, the Court notes that not all of Defendants' suggested reasons to impose sanctions persuade the *542 Court that a Rule 11 violation has occurred. As discussed above, Plaintiff submitted just two factual contentions that could warrant the imposition of Rule 11 sanctions. Plaintiff is a pro se litigant, and the Second Circuit has often instructed that pro se litigants are deserving of "special solicitude." See, e.g., Triestman v. Fed. Bureau of Prisons , 470 F.3d 471, 475 (2d Cir. 2006) ; see also Flemming v. Santamore , No. 9:15-CV-29 (DNH/CFH), 2015 WL 6394560, at *8 (N.D.N.Y. Oct. 21, 2015) ("[I]n light of the special solicitude granted to pro se litigants, the Court declines to issue sanctions under Rule 11 at this time."); see generally Maduakolam , 866 F.2d at 56 (stating that a court may consider a plaintiff's pro se status in determining whether to impose Rule 11 sanctions).
Furthermore, Plaintiff has been granted in forma pauperis status in order to proceed with this action. (Dkt. 5). Courts in this Circuit have frequently determined that a monetary sanction would be both ineffective and unreasonable in light of a litigant's status as a poor person. See Coon v. Sw. Vt. Med. Ctr. , No. 2:13-CV-182, 2014 WL 4925115, at *7 (D. Vt. Sept. 30, 2014) ("Given [the plaintiff's] in forma pauperis status, he would be unable to pay a monetary sanction." (citation omitted)); Adams v. Loreman , No. 8:07-CV-00452 (LEK/RFT), 2012 WL 555095, at *4 (N.D.N.Y. Feb. 21, 2012) ("[A]s [the p]laintiff is proceeding pro se and in forma pauperis , this is not a case where monetary sanctions would be reasonable." (quotation marks and citations omitted)); Colida v. Nokia Inc. , No. 07 Civ. 8056 (KMW) (HBP), 2008 WL 4517188, at *13 (S.D.N.Y. May 6, 2008) ("The fact that plaintiff is proceeding in forma pauperis further weighs in favor of declining to award monetary sanctions because plaintiff probably does not have the financial means to pay such sanctions."), report and recommendation adopted as modified , No. 07 Civ. 8056 (KMW) (HBP), 2008 WL 4449419 (S.D.N.Y. Sept. 29, 2008), aff'd , 347 Fed.Appx. 568 (Fed. Cir. 2009) ; Collins v. Cheney , No. 07-CV-0725S, 2007 WL 4300025, at *3 (W.D.N.Y. Dec. 3, 2007) (noting that the imposition of a monetary sanction upon a pro se litigant proceeding in forma pauperis would be "ineffective" and "could also work an unusual hardship on [the] plaintiff"). For similar reasons, the Court denies Defendants' request for an award of attorney's fees. See Haines v. Cook , No. 1:07-CV-138, 2009 WL 2043865, at *2 (D. Vt. July 8, 2009) (noting that payment of attorney's fees might be an appropriate sanction under Rule 37, but stating that the plaintiff's "status as an in forma pauperis litigant weighs heavily against imposing such a sanction"); Plevy v. Scully , 89 F.R.D. 665, 667 (W.D.N.Y. 1981) ("[The p]laintiff's indigency and incarceration would render an award of attorney's fees and costs to defendant a hollow gesture."); see also Huertas v. City of Philadelphia , No. Civ.A.02-7955, 2005 WL 226149, at *4 (E.D. Pa. Jan. 26, 2005) ("[M]onetary sanctions are not an option here because [the p]laintiff is proceeding in forma pauperis. Additionally, the Court previously awarded [the defendant] $200 in expenses and attorney's fees based on [the p]laintiff's violation of Rule 11 and this did nothing to curb [the p]laintiff's harassment of [the d]efendants' counsels."), aff'd , 139 Fed.Appx. 444 (3d Cir. 2005).
"In awarding attorney's fees and costs pursuant to Rule 11, a district court must be mindful that '[t]he purpose of a Rule 11 award is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses.' " Manti's Transp. v. Kenner , No. 13-CV-6546 (SJF) (AYS), 2015 WL 1915004, at *14 (E.D.N.Y. Apr. 27, 2015) (quoting *543 On Time Aviation, Inc. v. Bombardier Capital, Inc. , 354 Fed.Appx. 448, 452 (2d Cir. 2009) ); see Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc. , 28 F.3d 259, 266 (2d Cir. 1994) ("[T]he principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party but rather the deterrence of baseless filings and the curbing of abuses...."). The Court concludes that placing the burden of monetary sanctions or attorney's fees upon Plaintiff, who is incarcerated and proceeding pro se and in forma pauperis , would not serve this deterrent purpose.
However, the thrust of Defendants' motion requests that this Court not only dismiss the instant action, but also impose a filing injunction upon Plaintiff, barring him from commencing future actions without approval by the Court. (Dkt. 16-3 at 3). The Court notes that the "general rule in this Circuit is that an injunction against future filings cannot be ordered unless the litigant is provided notice of the Court's intention to enjoin h[im] from filing future cases and an opportunity to be heard with respect to the Court's intention to impose such an injunction." Collins , 2007 WL 4300025, at *4. Nonetheless, the Court does not find that such an extreme sanction is warranted in this case.
Indeed, giving consideration to Plaintiff's pro se status, the Court does not find that any sanction would be appropriately imposed at this time. See Smith v. Sch. of Visual Arts , No. 15-CV-8049(RA), 2016 WL 3440553, at *3 (S.D.N.Y. June 9, 2016) ("As [the plaintiff] is proceeding pro se and is entitled to a more lenient Rule 11 standard, the Court declines to impose sanctions."); Cruz v. Zwart , No. 9:13-CV-1287, 2014 WL 4771664, at *6 n.4 (N.D.N.Y. Sept. 24, 2014) (noting that while the defendants "requested dismissal of the plaintiff's complaint," the court "decline[s] to make that recommendation at this time largely in light of the Second Circuit's oft-repeated admonishment to extend special solicitude to pro se litigants"); Newman & Cahn, LLP. v. Sharp , 388 F.Supp.2d 115, 119 (E.D.N.Y. 2005) ("Although the Court finds that Linda Sharp's current petition is frivolous and unwarranted it declines to order sanctions because she is pro se. "); cf. DiProjetto v. Allen , No. 08-CV-6430 (CJS), 2009 WL 1405447, at *2 (W.D.N.Y. May 18, 2009) (imposing sanctions for the plaintiff's failure to comply with Rule 11(a), in part, because the "[d]efendants' motion is unopposed," and noting that "[o]rdinarily, in light of [the plaintiff's] pro se status, the Court would be inclined to allow him to correct this error"). Additionally, "courts that have imposed sanctions against pro se litigants frequently have attached importance to the fact that the litigant previously had been placed on notice that he or she was on the verge of violating Rule 11." Horton , 169 F.R.D. at 16 ; see Sachs , 2016 WL 4179792, at *7 ("In determining whether sanctions should be imposed on a pro se litigant, the court should consider whether the litigant has been previously warned that his conduct is in derogation of Rule 11."); cf. Baez v. Kennedy Child Study Ctr. , No. 11 Civ. 7635 (JMF), 2013 WL 705913, at *2 (S.D.N.Y. Feb. 27, 2013) ("[T]he dismissal of [the p]laintiff's complaint is an appropriate sanction for her repeated noncompliance with court orders and her discovery obligations.").
The Court has also taken into account the fact that Defendants have requested the dismissal of this action as an appropriate sanction. "[T]he Second Circuit has repeatedly held[ that] a Rule 11 dismissal is drastic-the harshest sanction and penalty available to the district court-and should be imposed 'only in extreme circumstances.' " Rates Tech. Inc. v. Mediatrix Telecom, Inc. , No. CV 05-2755 (JS) (AKT), 2007 WL 2021905, at *4 (E.D.N.Y. Mar. 16, 2007) (quoting Jones v. Niagara Frontier Transp. Auth. , 836 F.2d 731, 734-35 (2d Cir. 1987), cert. denied , *544 488 U.S. 825, 109 S.Ct. 74, 102 L.Ed.2d 50 (1988) ), report and recommendation adopted , No. 05-CV-2755(JS)(AKT), 2007 WL 1987787 (E.D.N.Y. June 29, 2007). In addition, Plaintiff's complaint raises a number of other contentions against Defendants beyond those contained in his motion for a preliminary injunction; a dismissal of this action with prejudice would eliminate those claims from future adjudication on the merits. See generally Triestman , 470 F.3d at 480 n.6 (noting that a court "must 'take appropriate measures to permit the adjudication of pro se claims on the merits' " (quoting Donald v. Cook Cty. Sheriff's Dep't , 95 F.3d 548, 555 (7th Cir. 1996) )).
Lastly, Defendants correctly note that Plaintiff appears to be a "prolific litigator." (Dkt. 16-3 at 3); see, e.g., Benitez v. Parmer , No. 9:12-CV-0448 (GTS/DEP), 2015 WL 1456642, at *4 (N.D.N.Y. Mar. 30, 2015) (describing Plaintiff as "a prolific litigant"), aff'd , 654 Fed.Appx. 502 (2d Cir. 2016). In addition, Plaintiff appears versed in certain basic legal principles. As such, it cannot be said that Plaintiff is a "wholly inexperienced pro se litigant[ ]." Muniz , 2007 WL 2027912, at *6 n.30. Even still, the Court gives some weight to the fact that Plaintiff is still "untutored in the law," Maduakolam , 866 F.2d at 56, and thus, he is deserving of leniency on this occasion. In deciding whether to impose sanctions, "the court may take into account ... whether the litigant had been warned of the possible imposition of sanctions." Daniel , 135 F.Supp.2d at 379. Plaintiff has never received any such admonishment from the Court in this action. See Commer v. Am. Fed'n of State, Cty. & Mun. Emps. , 272 F.Supp.2d 332, 340 (S.D.N.Y. 2003) ("[B]ecause Commer is a pro se plaintiff, the Court declines to impose sanctions for conduct about which Commer has not been explicitly warned."), aff'd , 390 F.3d 203 (2d Cir. 2004).
Although the filing of false documents in bad faith to a court can, in egregious cases, result in dismissal, see Ceglia v. Zuckerberg , No. 10-CV-00569A(F), 2013 WL 1208558 (W.D.N.Y. 2013), report and recommendation adopted by 2014 WL 1224574 (W.D.N.Y. 2014), aff'd , 600 Fed.Appx. 34 (2d Cir. 2015), such an extreme sanction is not warranted at this time. This is so especially in light of Plaintiff's pro se status, and "[i]n view of the fact that the Court has not previously admonished [Plaintiff] concerning this matter." Horton , 169 F.R.D. at 16. However, "Plaintiff is ... warned that he is not protected from Rule 11 sanctions merely because he appears pro se. " Dumont v. United States , No. 3:13-CV-0873 (GTS/DEP), 2013 WL 6240468, at *12 (N.D.N.Y. Dec. 3, 2013) ; see Malley v. N.Y.C. Bd. of Educ. , 207 F.Supp.2d 256, 259 (S.D.N.Y. 2002) ("The fact that a litigant appears pro se does not shield him from Rule 11 sanctions because 'one acting pro se has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.' " (quoting Patterson v. Aiken , 841 F.2d 386, 387 (11th Cir. 1988) )). Accordingly, Plaintiff is hereby further warned that any future violation of Rule 11 may result in dismissal of the action or other appropriate sanctions. This formal admonishment is consistent with other cases in this Circuit. See, e.g., Newman & Cahn, LLP. , 388 F.Supp.2d at 119 ("Linda Sharp is warned that the filing of another frivolous paper with the Court may result in monetary sanctions under Rule 11."); Horton , 169 F.R.D. at 16 ("[T]he plaintiff is expressly placed on notice of his duty to conduct reasonable inquiry into the law, and that his failure to comport with this standard may result in the imposition of sanctions against him.").
Therefore, Defendants' motion for sanctions is denied without prejudice.
*545 CONCLUSION
For the foregoing reasons, Plaintiff's motion for a preliminary injunction (Dkt. 4) is denied, and Defendants' motion for sanctions (Dkt. 16) is denied without prejudice.
SO ORDERED.

The Court notes that there are serious questions as to whether Plaintiff's motion for a preliminary injunction is still viable. Since the time he filed his motion, Plaintiff has been transferred from the Elmira Correctional Facility, and thus, his request for a court order requiring the medical staff at that facility to provide him with certain medical procedures and treatment appears to be moot. However, in light of Plaintiff's pro se status and the fact that Defendants' motion for sanctions necessitates that this Court review the substance of Plaintiff's motion papers, the Court liberally construes Plaintiff's submissions to reach the merits of his motion.

The following facts are taken from Plaintiff's Complaint unless otherwise indicated. (Dkt. 1).

Although Plaintiff's motion for a preliminary injunction was entered on the electronic docket on May 24, 2017, Plaintiff's motion was dated May 22, 2017, and the mailing envelope that contained the motion was post-marked on the same day. (Dkt. 4 at 1, 11). Accordingly, Plaintiff's motion was filed on May 22, 2017, pursuant to the "prison mailbox rule." See generally Houston v. Lack , 487 U.S. 266, 270-71, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) (stating prison mailbox rule).

The Court notes that Defendants' memorandum of law in support of their motion for sanctions requests an award of attorney's fees pursuant to "Federal Rule of Civil Procedure 11(d)(4)." (Dkt. 16-3 at 3). Since subsection (d) of Rule 11 does not contain any subparagraphs, let alone one pertaining to an award of attorney's fees, the Court presumes Defendants intended to cite to subsection (c). See Fed. R. Civ. P. 11(c)(4) (authorizing a court to order the payment "of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation").